# EXHIBIT 1



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

JUL 0 5 2016

Case ID: FNK-7862

David D. Aufhauser
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005-5901

Re: May 5, 2016 Kingpin Act Designations of Abdul Waked, Hamudi Waked, Lucia Touzard, and Related Companies

Dear Mr. Aufhauser:

This letter acknowledges receipt of your correspondence dated June 15, 2016 to the Office of Foreign Assets Control (OFAC), requesting a meeting, a copy of the administrative record, and reconsideration of your clients' designations as Specially Designated Narcotics Traffickers (SDNTs) pursuant to Section 805 of the Foreign Narcotics Kingpin Designation Act (Kingpin Act), 21 U.S.C. § 1904(b).

As OFAC stated in the June 8 letter to you, your request for reconsideration is denied at this time. Accordingly, as conveyed to you by attorneys from the Office of General Counsel on June 15, a meeting at this juncture is premature given that there is no pending reconsideration request. Should the basis for your request for reconsideration be further developed or clarified, you may resubmit your clients' reconsideration and meeting requests.

With respect to your request for access to the administrative record for your clients' designations, processing such a request requires extensive interagency consultation in order to comply with U.S. government regulations regarding the protection of privileged and otherwise protected information. In order to ensure that you have information as it is processed, OFAC will be providing a rolling production of the administrative record.

Enclosed please find one set of bates stamped pages FNK-5826 0001-0087, which includes one of the two redacted administrative records upon which several of your clients' designations were based as well as a copy of the U.S. Department of the Treasury press release and press charts related to the same. The redacted portions contain law enforcement sensitive or otherwise privileged information, or information not responsive to your request. The second set of the redacted administrative record will be provided to you as soon as it is finalized and will contain the records of your remaining clients as identified in your May 24, 2016 letter to OFAC Director John Smith.

Should additional unclassified, non-privileged, or otherwise releasable information become available, it shall be provided to you.

Please refer to FNK-7862 cited above in all future correspondence. For the most expedient communications, please direct all questions and correspondence regarding your requests to

**OFAC.Reconsideration@treasury.gov**. You may also write, call, or fax OFAC at the following:

> U.S. Department of the Treasury
> Office of Foreign Assets Control
> ATTN: Office of Global Targeting
> 1500 Pennsylvania Avenue, N.W. (Freedman's Bank Building)
> Washington, DC 20220
>
> Telephone: (202) 622-2420
> Fax: (202) 622-5390

Thank you for your cooperation.

Sincerely,

Mark Samara
Assistant Director
Crime/Narcotics and Western Hemisphere Division
Office of Foreign Assets Control

Enclosure

2



UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~
DEPARTMENT OF THE TREASURY
WASHINGTON, D.C. 20220

(U) Case ID FNK-5826

(U) OFFICE OF FOREIGN ASSETS CONTROL

(U) **EVIDENTIARY MEMORANDUM**

(U) MEMORANDUM FOR: JOHN E. SMITH                4/9/16
ACTING DIRECTOR
OFFICE OF FOREIGN ASSETS CONTROL

(U) THROUGH:                GREGORY T. GATJANIS                2-21-2018
ASSOCIATE DIRECTOR
OFFICE OF GLOBAL TARGETING

MARK SAMARA                3/18/16
ASSISTANT DIRECTOR
CRIME/NARCOTICS & WESTERN HEMISPHERE DIVISION

Dated 3/18/2016
SECTION CHIEF
SOUTH AMERICA/INTERNATIONAL SECTION
Dated 3/17/2016

(U) FROM:                Sanctions Investigator
South America/International Section

(U) SUBJECT:                Proposed designation of five individuals and nine entities as
Specially Designated Narcotics Traffickers pursuant to the Foreign
Narcotics Kingpin Designation Act

(U) **I. Summary**

(U) The information presented in this memorandum and the related exhibits provide reason to
believe that the **WAKED MONEY LAUNDERING ORGANIZATION**[1] (**WAKED MLO**),

---

[1] (U) Throughout this memorandum an asterisk (*) following a name denotes an individual, a company, or an
organization that has been previously identified or designated by the President of the United States or by the Office
of Foreign Assets Control as a Specially Designated Narcotics Trafficker (SDNT) pursuant to the Kingpin Act and
who is thus currently subject to sanctions under the Kingpin Act, 21 U.S.C. §§ 1901-1908. Names of individuals
and/or entities that are **bolded** denote an individual or entity that is proposed for designation in this memorandum or
an accompanying memorandum.

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~                1

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

**Nidal Ahmed WAKED HATUM**, and **Abdul Mohamed WAKED FARES** are "foreign persons" who:

- play a significant role in international narcotics trafficking

and therefore meet the statutory criteria for designation as Specially Designated Narcotics Traffickers (SDNTs) pursuant to section 805(b)(4) of the Foreign Narcotics Kingpin Designation Act (Kingpin Act), 21 U.S.C. § 1904(b)(4). [Exhibit 1, pp. 1, 4-5]

(U) In addition, information presented in this memorandum and the related exhibits provide reason to believe that three other individuals and eight entities are foreign persons who:

- are materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of, the **WAKED MLO**, **Nidal Ahmed WAKED HATUM**, and/or **Abdul Mohamed WAKED FARES**; and/or

- are owned, controlled, or directed by, or acting for or on behalf of, the **WAKED MLO**, **Nidal Ahmed WAKED HATUM**, and/or **Abdul Mohamed WAKED FARES**;

and therefore meet the statutory criteria for designation as SDNTs pursuant to sections 805(b)(2) and/or (3) of the Kingpin Act, 21 U.S.C. §§ 1904(b)(2) and/or (3). [Exhibit 1, pp. 1, 4-5]

(U) Following appropriate interagency consultation, the names of these foreign persons will be posted on the website of the Office of Foreign Assets Control (OFAC) and published in the *Federal Register*.

(U) **Listings:**

(U) Individuals:

1. (U) Non-Responsive
2. (U) **WAKED FARES, Abdul Mohamed**
3. (U) Non-Responsive
4. (U) Non-Responsive
5. (U) Non-Responsive

(U) Entities:[2]

1. (U) **WAKED MONEY LAUNDERING ORGANIZATION** [organization]
2. (U) 2-7 Non-Responsive
3. (U)

---

[2] (U) According to the Kingpin Act, the term "entity" is defined as a partnership, joint venture, association, corporation, organization, network, group, or subgroup, or any form of business collaboration. [Exhibit 1, p. 7]

2

FNK-5826 0002

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

4.  (U) ████████████████████████
5.  (U) ████████████████████████████
6.  (U) ██████████████████████
7.  (U) ████████████████████████████
8.  (U) **GRUPO WISA, S.A.** [corporation]
9.  (U) ████ Non-Responsive ████

(U) The information supporting these designations includes:[3]

(U//~~LES~~) 1. 

(U//~~LES~~) 2.

[Exhibit 61, p. 1]

(U//~~LES~~) 3.

---

[3] (U) To the extent that the supporting documents are not in English, translations were made and are reflected herein. Spanish to English translations throughout this memorandum were made by Sanctions Investigator ████████ ████ who studied Spanish in high school and college. ██ is a native Spanish writer and speaker and has been working with Spanish language documents in a professional capacity ████████████ Translations of a single word or phrase are included in the text of this memorandum. Translations of sentences, paragraphs, or more are included as attachments to the cited exhibits.

3

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



(U//~~LES~~) 4.

(U) 5. <u>Miscellaneous information</u>.  This evidentiary also uses information gathered from various sources, including foreign government websites and press articles.

## (U) II. Background

(U) The DEA considers the laundering of narcotics proceeds to be central to the perpetuation of the international market in illegal drugs: "[T]he flow of money back to the international sources of supply . . . is destined to finance the next cycle of illegal drugs that will target our consumer market here in the United States.  This is also the money that allows international [drug trafficking organizations] to continue to operate. . . . Drug proceeds are used to pay sources of supply, to support the infrastructure of the organization, and to acquire personal assets."  Money laundering allows such flows to continue undetected and undisrupted by law enforcement, and is therefore an essential link in the chain of illicit activities involved in transporting illicit narcotics across borders.  [Exhibit 2, pp. 1-2]

4

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



[Exhibit 31, p. 1]

[Exhibit 30, pp. 1-2]

NON-RESPONSIVE

[Exhibit 31, p. 1]

[Exhibit 30, p. 1]

[Exhibit 59, p. 1]

[Exhibit 59, p. 2]

[Exhibit 59, p. 12]

[Exhibit 59, p. 14]

[Exhibit 59, p. 2]

[Exhibit 59, p. 22]

5

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



(U//~~LES~~)

[Exhibit 3, p. 1]

(U) **III. Designations Pursuant to Section 805(b)(4)**

(U) 1.  **WAKED MONEY LAUNDERING ORGANIZATION**

(U) <u>Summary</u>

(U) The information presented in this memorandum and the related exhibits provide reason to believe that the **WAKED MLO** is a "foreign person" who plays a significant role in international narcotics trafficking, and therefore meets the statutory criteria for designation as a SDNT pursuant to section 805(b)(4) of the Kingpin Act, 21 U.S.C. § 1904(b)(4).

(U) <u>Basis for Designation</u>



(U//~~LES~~)

[Exhibit 4, pp. 1-2]

(U//~~LES~~)

---

[14] (U) ████████████████████████████████████████
████ [Exhibit 59, p. 1]

[15] (U) ████████████████████████████████████
[Exhibit 59, p. 12]

[16] (U) ████████████████████████████████████
[Exhibit 59, p. 16.]

[17] (U) ████████ [Exhibit 33, p. 1]

UNCLASSIFIED//L̶A̶W̶ ̶E̶N̶F̶O̶R̶C̶E̶M̶E̶N̶T̶ ̶S̶E̶N̶S̶I̶T̶I̶V̶E̶



[Exhibit 4, pp. 1-3]

(U//L̶E̶S̶)

[Exhibit 31, p. 1]

(U//L̶E̶S̶)

[Exhibit 31, pp. 3-4]

(U//L̶E̶S̶)

[18] (U//L̶E̶S̶)

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



[Exhibit 6, pp. 2-4]

(U) Additional Information

(U//~~LES~~)

[Exhibit 6, pp. 2-3]

(U//~~LES~~)

[Exhibit 31, p. 4]

(U) Identifying Information

- (U) Full Name: **WAKED MONEY LAUNDERING ORGANIZATION**[20]
- (U) Location:  Panama[21]



Non-Responsive and Pages 9-19 Non-Responsive

[19] (U)

[Exhibit 60, p. 1]

[20] (U//~~LES~~) [Exhibit 31, p. 1]
[21] (U//~~LES~~) [Exhibit 4, pp. 1-2]

8

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0008

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

Non-Responsive

3.   **WAKED FARES, Abdul**

(U) Summary

(U) The information presented in this memorandum and the related exhibits provide reason to believe that **WAKED FARES** is a "foreign person" who plays a significant role in international narcotics trafficking, and therefore meets the statutory criteria for designation as an SDNT pursuant to section 805(b)(4) of the Kingpin Act, 21 U.S.C. § 1904(b)(4).

(U) Basis for Designation

(U//~~LES~~)

(U//~~LES~~)

[Exhibit 4, pp. 1-3]

(U//~~LES~~)

(U//~~LES~~)

[Exhibit 31, p. 1]

(U//~~LES~~)

Non-Responsive

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0009

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



[Exhibit 31, p. 4]

(U//~~LES~~)

[Exhibit 31, pp. 3-4]

(U//~~LES~~)

[Exhibit 31, p. 1]

(U//~~LES~~)

[Exhibit 31, p. 2]

(U//~~LES~~)

[Exhibit 31, p. 3]

(U//~~LES~~)

[Exhibit 31, p. 4]

(U//~~LES~~)

21

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



[Exhibit 31, p. 5]

(U//~~LES~~)

[Exhibit 31, p. 4]

(U//~~LES~~)

[Exhibit 8, p. 2]

(U//~~LES~~)

[Exhibit 12, p. 10]

*(U//~~LES~~)*

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0011

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



(U//~~LES~~)

[Exhibit 30, p. 1]

(U//~~LES~~)

[Exhibit 30, p. 2]

(U//~~LES~~)

[Exhibit 30, p. 3]

(U//~~LES~~)

[Exhibit 10, pp. 1-2]

(U//~~LES~~)

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0012

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



[Exhibit 11, pp. 2-3]

(U//~~LES~~)

[Exhibit 6, pp. 2-3]

*(U//~~LES~~)*

(U//~~LES~~)

[Exhibit 13, p. 4]

*(U//~~LES~~)*

(U//~~LES~~)

[Exhibit 32, pp. 2-3]

(U//~~LES~~)

---

[55] (U)

[Exhibit 25, p. 1]

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



[Exhibit 32, p. 3]

(U//~~LES~~)

[Exhibit 32, p. 3]

*(U//~~LES~~)*

(U//~~LES~~)

[Exhibit 18, pp. 4-5]

(U) Additional Information

(U//~~LES~~)

[Exhibit 4, p. 3]

(U//~~LES~~)

[Exhibit 6, pp. 2-3]

(U//~~LES~~)

[Exhibit 30, p. 2]

(U) According to **WAKED FARES**'s curriculum vitae, **WAKED FARES** is the founder, president, and legal representative of **GRUPO WISA, S.A.** [Exhibit 47, p. 2]

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

(U//~~LES~~)



[Exhibit 31, p. 2]

(U) Identifying Information

- (U) Full Name: **Abdul Mohamed WAKED FARES**[56]
- (U) DOB: 19 Dec 1949[57]
- (U) Alternate DOB: 9 Dec 1949[58]
- (U) POB: Kamed El Louz, Lebanon[59]
- (U) COC: Lebanon[60]
- (U) COC: Panama[61]
- (U) COC: Colombia[62]
- (U) Passport Number: 1640816 (Panama)[63]
- (U) Cedula Number: N-19-804 (Panama)[64]
- (U) Linked To: **WAKED MLO**[65]

---

[56] (U//~~LES~~) [Exhibit 4, p. 1]
[57] (U//~~LES~~) [Exhibit 4, p. 1]
[58] (U//~~LES~~) [Exhibit 4, p. 1]
[59] (U//~~LES~~) [Exhibit 4, p. 1]
[60] (U//~~LES~~) [Exhibit 4, p. 1]
[61] (U//~~LES~~) [Exhibit 4, p. 1]
[62] (U//~~LES~~) [Exhibit 4, p. 1]
[63] (U//~~LES~~) [Exhibit 49, p. 10]
[64] (U) [Exhibit 47, p. 1]
(U//~~LES~~) [65] ▇ Abdul Mohamed WAKED FARES is the co-head of the **WAKED MLO**; therefore, he is linked to the **WAKED MLO**.  [Exhibit 4, pp. 1-2]

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

(U) **WAKED FARES** plays a documented role in the following entities, also proposed for designation in this memorandum:

- (U) **GRUPO WISA, S.A.**[66]

(U) **IV. Individuals Proposed for Designation Pursuant to Section 805(b)(2) and (3)**



Non-Responsive and Pages 28-45 Non-Responsive

---

[66] (U) [Exhibit 33]

Non-Responsive

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0016

UNCLASSIFIED//LAW ENFORCEMENT SENSITIVE



(U) 7.  **GRUPO WISA, S.A.**

(U) <u>Summary</u>

(U) The information presented below and the related exhibits provide reason to believe that **GRUPO WISA, S.A. (GRUPO WISA)**, is materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of the **WAKED MLO** and/or **WAKED FARES**, and/or is owned, controlled, or directed by **WAKED FARES**, and therefore meets the criteria for designation as an SDNT pursuant to sections 805(b)(2) and/or (3) of the Kingpin Act, 21 U.S.C. § 1904(b)(2) and/or (3).

(U) <u>Basis for Designation</u>

<u>(U) Business Reporting and Corporate Documentation</u>

(U) According to Panama Public Registry documentation accessed on October 14, 2015, **WAKED FARES** is the President and a Director of **GRUPO WISA**. [Exhibit 33, p. 1]

(U) According to **WAKED FARES**'s curriculum vitae accessed on October 8, 2015, **WAKED FARES** is the founder, president, and legal representative of **GRUPO WISA, S.A.** [Exhibit 47, p. 2]

(U) According to a January 2014 interview of **WAKED FARES** in *The Business Year*, a business publication, **WAKED FARES** is the President of **GRUPO WISA**, a holding company with a diverse portfolio that includes perfumes and fragrances, two Panamanian daily newspapers, *El Siglo* and *La Estrella*, and various commercial construction and real estate projects. [Exhibit 34, p. 1]

*(U//LES)*

46

FNK-5826 0017

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~



(U//~~LES~~)

[Exhibit 4, pp. 1-2]

(U//~~LES~~)

(U//~~LES~~)

[Exhibit 31, p. 4]

(U//~~LES~~)

[Exhibit 12, pp. 6, 9]

(U//~~LES~~)

[Exhibit 12, pp. 2-3]

(U//~~LES~~)

[Exhibit 8, p. 2]

(U//~~LES~~)

(U//~~LES~~)

[Exhibit 32, p. 3]

(U//~~LES~~)

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0018

████████████████████████████████████████████

████████████████████████████████████████████

████ [Exhibit 44, pp. 1-2]

(U) Additional Information

(U) According to **GRUPO WISA**'s website, **GRUPO WISA** operates more than 60 La Riviera stores in Mexico, Costa Rica, Nicaragua, El Salvador, Bolivia, Belize, Colombia, Guatemala, Honduras, and in all of the Duty Free areas in the principal airports of Central America. [Exhibit 58, p. 1, translation on p. 13]

(U) According to an article dated August 2, 2015 in *La Prensa*, the Public Ministry of Guatemala arrested the former chief of the Superintendencia de Administración (SAT)[123], Rudy Villeda, on charges of $7.7 million in tax evasion in a deal that provided favorable treatment to **GRUPO WISA**. [Exhibit 43, p. 1] According to an article in *Metro Libre*, **GRUPO WISA** is under investigation in Guatemala for $7.6 million in tax evasion. [Exhibit 45, p. 2]

(U) According to an article dated October 9, 2015 in *La Prensa*, the Prosecutor for Administrative Offenses of the Public Ministry of Guatemala closed ten La Riviera duty free stores at La Aurora Airport that sell fragrances, makeup, and other treatments for alleged customs fraud. The investigations show that between 2009 and 2012, the stores evaded taxes of almost $7.5 million, according to a spokesperson for the Guatemalan Public Ministry. A Panamanian attorney, Lucia Touzard Romo, is the only representative of the company that will face criminal charges as she was the sole signatory on the documents establishing the Guatemalan franchise [of **GRUPO WISA**, which does business as **LA RIVIERA**]. Lucia Touzard Romo, who is a legal representative of **GRUPO WISA** of Panama, is the subject of an international arrest warrant and could face five to eight years in prison for the crime. [Exhibit 53, p. 3]

(U) Identifying Information

- (U) Full Name: **GRUPO WISA, S.A.**[124]
- (U) AKA: **LA RIVIERA**[125]
- (U) Address: Calle 15 entre Avenida Santa Isabel y Avenida Roosevelt, Zona Libre de Colon, Colon, Panama[126]
- (U) Address: Torre Generali, Piso 11 y 12, Calle 54 Este y Avenida Samuel Lewis, Panama, Panama[127]
- (U) Address: Colombia[128]
- (U) Address: Guatemala[129]

---

[123] (U) OFAC comment: the SAT is Guatemala's tax agency.
[124] (U) [Exhibit 33, p. 1]
[125] (U) [Exhibit 53, pp. 3 and Exhibit 58, pp. 1-5, 10]
[126] (U) [Exhibit 57, p. 1]
[127] (U) [Exhibit 57, p. 3]
[128] (U) [Exhibit 58, pp. 8, 13]

FNK-5826 0019

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

- (U) Address: Belize[130]
- (U) Address: Costa Rica[131]
- (U) Address: El Salvador[132]
- (U) Address: Mexico[133]
- (U) Address: Bolivia[134]
- (U) Address: Honduras[135]
- (U) Address: Nicaragua[136]
- (U) Address: Uruguay[137]
- (U) RUC: 645451-1-458900 (Panama)[138]



Non-Responsive and Page 50 Non-Responsive

---

[129] (U) [Exhibit 58, pp. 8, 13]
[130] (U) [Exhibit 58, pp. 8, 13]
[131] (U) [Exhibit 58, pp. 8, 13]
[132] (U) [Exhibit 58, pp. 8, 13]
[133] (U) [Exhibit 58, pp. 8, 13]
[134] (U) [Exhibit 58, pp. 8, 13]
[135] (U) [Exhibit 58, pp. 8, 13]
[136] (U) [Exhibit 58, pp. 8, 13]
[137] (U) [Exhibit 58, pp. 9, 13]
[138] (U) [Exhibit 56]

Non-Responsive

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0020

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

**(U) V. List of Exhibits**

Exhibit 1:      (U) Foreign Narcotics Kingpin Designation Act, Public Law 106-120, 21 U.S.C. §§ 1901-1908, December 3, 1999.

Exhibit 2:      (U) DEA, "DEA Programs: Money Laundering," http://www.justice.gov/dea/ops/money.shtml, accessed on February 20, 2013.

Exhibit 3:      (U//~~LES~~) ███████████████████████████████
█████████████

Exhibit 4:      (U//~~LES~~) ███████████████████████████
████████████████

Exhibit 5:      ███████████ Non-Responsive ███████████

Exhibit 6:      (U//~~LES~~) ███████████████████

Exhibit 7:      ███████████ Non-Responsive ███████████

Exhibit 8:      (U//~~LES~~) ████████████████████

Exhibit 9:      ███████████ Non-Responsive ████████████

Exhibit 10:     (U//~~LES~~) ████████████████████████

Exhibit 11:     (U//~~LES~~) ██████████████████████

Exhibit 12:     (U//~~LES~~) ███████████████████████

Exhibit 13:     (U//~~LES~~) ███████████████████

Exhibit 14:     ███████████ Non-Responsive ████████████

Exhibit 15:     ███████████ Non-Responsive ███████████

Exhibit 16:     ███████████ Non-Responsive ███████████

Exhibit 17:     ███████████ Non-Responsive ████████████

Exhibit 18:     (U//~~LES~~) ████████████████████

Exhibit 19:     ███████████ Non-Responsive ███████████

Exhibit 20:     ███████████ Non-Responsive █████████████

51

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

Exhibit 21:    Non-Responsive

Exhibit 22:    Non-Responsive

Exhibit 23:    Non-Responsive

Exhibit 24:    Non-Responsive

Exhibit 25:    (U)

Exhibit 26:    Non-Responsive

Exhibit 27:    Non-Responsive

Exhibit 28:    Non-Responsive

Exhibit 29:    Non-Responsive

Exhibit 30:    (U//~~LES~~)

Exhibit 31:    (U//~~LES~~)

Exhibit 32:    (U//~~LES~~)

Exhibit 33:    (U) Panama Public Registry, Grupo Wisa, S.A., accessed on October 14, 2015.

Exhibit 34:    (U) *The Business Year*, "Abdul Mohamed Waked Fares: What Do You Need?," accessed September 14, 2015.

Exhibit 35:    Non-Responsive

Exhibit 36:    Non-Responsive

Exhibit 37:    Non-Responsive

52

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

Exhibit 38:     [Non-Responsive]

Exhibit 39:     [Non-Responsive]

Exhibit 40:     [Non-Responsive]

Exhibit 41:     [Non-Responsive]

Exhibit 42:     [Non-Responsive]

Exhibit 43:     (U) *La Prensa*, "Asocian a Grupo Wisa con evasion en Guatemala," August 2, 2015.

Exhibit 44:     (U//~~LES~~) [redacted]

Exhibit 45:     (U) *Metro Libre*, "Asocian a Grupo Wisa con evasion en Guatemala," August 2, 2015.

Exhibit 46:     [Non-Responsive]

Exhibit 47:     (U) Abdul Waked, CV Abdul Waked (Español),
                https://abdulwaked.wordpress.com/2013/05/11/cv-abdul-waked-espanol/,
                accessed on October 8, 2015.

Exhibit 48:     [Non-Responsive]

Exhibit 49:     (U//~~LES~~) [redacted]

Exhibit 50:     [Non-Responsive]

Exhibit 51:     [Non-Responsive]

Exhibit 52:     [Non-Responsive]

Exhibit 53:     (U) *La Prensa*, "Cierran diez locales de 'La Riviera' en Guatemala," October 9, 2015.

Exhibit 54:     [Non-Responsive]

Exhibit 55:     [Non-Responsive]

53

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

Exhibit 56:    (U) Busqueda del Aviso de Operacion, Panama Emprende, Grupo Wisa, November 2, 2015.

Exhibit 57:    (U) Mapa (Addresses), Grupo Wisa, http://grupowisa.com/mapa, accessed on November 2, 2015.

Exhibit 58:    (U) La Riviera Locations, Grupo Wisa, http://grupowisa.com/tiendas/la-riviera/, accessed on November 3, 2015.

Exhibit 59:    (U) ███████████████████████████████████████████
               ██████████████████

Exhibit 60:    (U) ██████████████████████████████████████████
               ████████████████

Exhibit 61:    (U) ██████████████████████████████████████████
               ████████████████████████████████████████
               ██████████████████

Exhibit 62:    ██████████████████Non-Responsive██████████████
               ████████████████████████████████████████
               █████████████████████████

54

UNCLASSIFIED//~~LAW ENFORCEMENT SENSITIVE~~

FNK-5826 0024

# Exhibits

Exhibit 1

Ex. 1

113 STAT. 1626        PUBLIC LAW 106–120—DEC. 3, 1999

50 USC 401 note.   **SEC. 712. CONGRESSIONAL INTELLIGENCE COMMITTEES DEFINED.**

In this title, the term "congressional intelligence committees" means the following:

(1) The Select Committee on Intelligence of the Senate.
(2) The Permanent Select Committee on Intelligence of the House of Representatives.

Foreign Narcotics
Kingpin
Designation Act.

# TITLE VIII—INTERNATIONAL NARCOTICS TRAFFICKING

21 USC 1901
note.
**SEC. 801. SHORT TITLE.**

This title may be cited as the "Foreign Narcotics Kingpin Designation Act".

21 USC 1901.   **SEC. 802. FINDINGS AND POLICY.**

(a) FINDINGS.—Congress makes the following findings:

(1) Presidential Decision Directive 42, issued on October 21, 1995, ordered agencies of the executive branch of the United States Government to, inter alia, increase the priority and resources devoted to the direct and immediate threat international crime presents to national security, work more closely with other governments to develop a global response to this threat, and use aggressively and creatively all legal means available to combat international crime.

(2) Executive Order No. 12978 of October 21, 1995, provides for the use of the authorities in the International Emergency Economic Powers Act (IEEPA) (50 U.S.C. 1701 et seq.) to target and apply sanctions to four international narcotics traffickers and their organizations that operate from Colombia.

(3) IEEPA was successfully applied to international narcotics traffickers in Colombia and based on that successful case study, Congress believes similar authorities should be applied worldwide.

(4) There is a national emergency resulting from the activities of international narcotics traffickers and their organizations that threatens the national security, foreign policy, and economy of the United States.

(b) POLICY.—It shall be the policy of the United States to apply economic and other financial sanctions to significant foreign narcotics traffickers and their organizations worldwide to protect the national security, foreign policy, and economy of the United States from the threat described in subsection (a)(4).

21 USC 1902.   **SEC. 803. PURPOSE.**

The purpose of this title is to provide authority for the identification of, and application of sanctions on a worldwide basis to, significant foreign narcotics traffickers, their organizations, and the foreign persons who provide support to those significant foreign narcotics traffickers and their organizations, whose activities threaten the national security, foreign policy, and economy of the United States.

President.
21 USC 1903.
**SEC. 804. PUBLIC IDENTIFICATION OF SIGNIFICANT FOREIGN NARCOTICS TRAFFICKERS AND REQUIRED REPORTS.**

(a) PROVISION OF INFORMATION TO THE PRESIDENT.—The Secretary of the Treasury, the Attorney General, the Secretary

*1*

PUBLIC LAW 106–120—DEC. 3, 1999          113 STAT. 1627

of Defense, the Secretary of State, and the Director of Central Intelligence shall consult among themselves and provide the appropriate and necessary information to enable the President to submit the report under subsection (b). This information shall also be provided to the Director of the Office of National Drug Control Policy.

(b) PUBLIC IDENTIFICATION AND SANCTIONING OF SIGNIFICANT FOREIGN NARCOTICS TRAFFICKERS.—Not later than June 1, 2000, and not later than June 1 of each year thereafter, the President shall submit a report to the Permanent Select Committee on Intelligence, and the Committees on the Judiciary, International Relations, Armed Services, and Ways and Means of the House of Representatives; and to the Select Committee on Intelligence, and the Committees on the Judiciary, Foreign Relations, Armed Services, and Finance of the Senate—

    (1) identifying publicly the foreign persons that the President determines are appropriate for sanctions pursuant to this title; and

    (2) detailing publicly the President's intent to impose sanctions upon these significant foreign narcotics traffickers pursuant to this title.

The report required in this subsection shall not include information on persons upon which United States sanctions imposed under this title, or otherwise on account of narcotics trafficking, are already in effect.

(c) UNCLASSIFIED REPORT REQUIRED.—The report required by subsection (b) shall be submitted in unclassified form and made available to the public.

(d) CLASSIFIED REPORT.—(1) Not later than July 1, 2000, and not later than July 1 of each year thereafter, the President shall provide the Permanent Select Committee on Intelligence of the House of Representatives and the Select Committee on Intelligence of the Senate with a report in classified form describing in detail the status of the sanctions imposed under this title, including the personnel and resources directed towards the imposition of such sanctions during the preceding fiscal year, and providing background information with respect to newly-identified significant foreign narcotics traffickers and their activities.

(2) Such classified report shall describe actions the President intends to undertake or has undertaken with respect to such significant foreign narcotics traffickers.

(3) The report required under this subsection is in addition to the President's obligations to keep the intelligence committees of Congress fully and currently informed pursuant to the provisions of the National Security Act of 1947.

(e) EXCLUSION OF CERTAIN INFORMATION.—

    (1) INTELLIGENCE.—Notwithstanding any other provision of this section, the reports described in subsections (b) and (d) shall not disclose the identity of any person, if the Director of Central Intelligence determines that such disclosure could compromise an intelligence operation, activity, source, or method of the United States.

    (2) LAW ENFORCEMENT.—Notwithstanding any other provision of this section, the reports described in subsections (b) and (d) shall not disclose the name of any person if the Attorney General, in coordination as appropriate with the Director of the Federal Bureau of Investigation, the Administrator of the

*Margin notes:*
Deadline.
Public information.
Deadline.

2

FNK-5826 0027

Drug Enforcement Administration, and the Secretary of the Treasury, determines that such disclosure could reasonably be expected to—

(A) compromise the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution that furnished information on a confidential basis;

(B) jeopardize the integrity or success of an ongoing criminal investigation or prosecution;

(C) endanger the life or physical safety of any person; or

(D) cause substantial harm to physical property.

(f) NOTIFICATION REQUIRED.—(1) Whenever either the Director of Central Intelligence or the Attorney General makes a determination under subsection (e), the Director of Central Intelligence or the Attorney General shall notify the Permanent Select Committee on Intelligence of the House of Representatives and the Select Committee on Intelligence of the Senate, and explain the reasons for such determination.

Deadline.

(2) The notification required under this subsection shall be submitted to the Permanent Select Committee on Intelligence of the House of Representatives and the Select Committee on Intelligence of the Senate not later than July 1, 2000, and on an annual basis thereafter.

(g) DETERMINATIONS NOT TO APPLY SANCTIONS.—(1) The President may waive the application to a significant foreign narcotics trafficker of any sanction authorized by this title if the President determines that the application of sanctions under this title would significantly harm the national security of the United States.

Notification.
Deadline.

(2) When the President determines not to apply sanctions that are authorized by this title to any significant foreign narcotics trafficker, the President shall notify the Permanent Select Committee on Intelligence, and the Committees on the Judiciary, International Relations, Armed Services, and Ways and Means of the House of Representatives, and the Select Committee on Intelligence, and the Committees on the Judiciary, Foreign Relations, Armed Services, and Finance of the Senate not later than 21 days after making such determination.

(h) CHANGES IN DETERMINATIONS TO IMPOSE SANCTIONS.—

Public
information.

(1) ADDITIONAL DETERMINATIONS.—(A) If at any time after the report required under subsection (b) the President finds that a foreign person is a significant foreign narcotics trafficker and such foreign person has not been publicly identified in a report required under subsection (b), the President shall submit an additional public report containing the information described in subsection (b) with respect to such foreign person to the Permanent Select Committee on Intelligence, and the Committees on the Judiciary, International Relations, Armed Services, and Ways and Means of the House of Representatives, and the Select Committee on Intelligence, and the Committees on the Judiciary, Foreign Relations, Armed Services, and Finance of the Senate.

(B) The President may apply sanctions authorized under this title to the significant foreign narcotics trafficker identified in the report submitted under subparagraph (A) as if the trafficker were originally included in the report submitted pursuant to subsection (b) of this section.

PUBLIC LAW 106–120—DEC. 3, 1999          113 STAT. 1629

(C) The President shall notify the Secretary of the Treasury of any determination made under this paragraph. [Notification.]

(2) REVOCATION OF DETERMINATION.—(A) Whenever the President finds that a foreign person that has been publicly identified as a significant foreign narcotics trafficker in the report required under subsection (b) or this subsection no longer engages in those activities for which sanctions under this title may be applied, the President shall issue public notice of such a finding. [Notice.]

(B) Not later than the date of the public notice issued pursuant to subparagraph (A), the President shall notify, in writing and in classified or unclassified form, the Permanent Select Committee on Intelligence, and the Committees on the Judiciary, International Relations, Armed Services, and Ways and Means of the House of Representatives, and the Select Committee on Intelligence, and the Committees on the Judiciary, Foreign Relations, Armed Services, and Finance of the Senate of actions taken under this paragraph and a description of the basis for such actions. [Deadline. Notification.]

**SEC. 805. BLOCKING ASSETS AND PROHIBITING TRANSACTIONS.**          [21 USC 1904.]

(a) APPLICABILITY OF SANCTIONS.—A significant foreign narcotics trafficker publicly identified in the report required under subsection (b) or (h)(1) of section 804 and foreign persons designated by the Secretary of the Treasury pursuant to subsection (b) of this section shall be subject to any and all sanctions as authorized by this title. The application of sanctions on any foreign person pursuant to subsection (b) or (h)(1) of section 804 or subsection (b) of this section shall remain in effect until revoked pursuant to section 804(h)(2) or subsection (e)(1)(A) of this section or waived pursuant to section 804(g)(1).

(b) BLOCKING OF ASSETS.—Except to the extent provided in regulations, orders, instructions, licenses, or directives issued pursuant to this title, and notwithstanding any contract entered into or any license or permit granted prior to the date on which the President submits the report required under subsection (b) or (h)(1) of section 804, there are blocked as of such date, and any date thereafter, all such property and interests in property within the United States, or within the possession or control of any United States person, which are owned or controlled by—

(1) any significant foreign narcotics trafficker publicly identified by the President in the report required under subsection (b) or (h)(1) of section 804;

(2) any foreign person that the Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, designates as materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a significant foreign narcotics trafficker so identified in the report required under subsection (b) or (h)(1) of section 804, or foreign persons designated by the Secretary of the Treasury pursuant to this subsection;

PUBLIC LAW 106–120—DEC. 3, 1999

(3) any foreign person that the Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, designates as owned, controlled, or directed by, or acting for or on behalf of, a significant foreign narcotics trafficker so identified in the report required under subsection (b) or (h)(1) of section 804, or foreign persons designated by the Secretary of the Treasury pursuant to this subsection; and

(4) any foreign person that the Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, designates as playing a significant role in international narcotics trafficking.

(c) PROHIBITED TRANSACTIONS.—Except to the extent provided in regulations, orders, instructions, licenses, or directives issued pursuant to this title, and notwithstanding any contract entered into or any license or permit granted prior to the date on which the President submits the report required under subsection (b) or (h)(1) of section 804, the following transactions are prohibited:

(1) Any transaction or dealing by a United States person, or within the United States, in property or interests in property of any significant foreign narcotics trafficker so identified in the report required pursuant to subsection (b) or (h)(1) of section 804, and foreign persons designated by the Secretary of the Treasury pursuant to subsection (b) of this section.

(2) Any transaction or dealing by a United States person, or within the United States, that evades or avoids, or has the effect of evading or avoiding, and any endeavor, attempt, or conspiracy to violate, any of the prohibitions contained in this title.

(d) LAW ENFORCEMENT AND INTELLIGENCE ACTIVITIES NOT AFFECTED.—Nothing in this title prohibits or otherwise limits the authorized law enforcement or intelligence activities of the United States, or the law enforcement activities of any State or subdivision thereof.

(e) IMPLEMENTATION.—(1) The Secretary of the Treasury, in consultation with the Attorney General, the Director of Central Intelligence, the Director of the Federal Bureau of Investigation, the Administrator of the Drug Enforcement Administration, the Secretary of Defense, and the Secretary of State, is authorized to take such actions as may be necessary to carry out this title, including—

(A) making those designations authorized by paragraphs (2), (3), and (4) of subsection (b) of this section and revocation thereof;

(B) promulgating rules and regulations permitted under this title; and

(C) employing all powers conferred on the Secretary of the Treasury under this title.

(2) Each agency of the United States shall take all appropriate measures within its authority to carry out the provisions of this title.

FNK-5826 0030   *5*

PUBLIC LAW 106–120—DEC. 3, 1999          113 STAT. 1631

(3) Section 552(a)(3) of title 5, United States Code, shall not apply to any record or information obtained or created in the implementation of this title.

(f) JUDICIAL REVIEW.—The determinations, identifications, findings, and designations made pursuant to section 804 and subsection (b) of this section shall not be subject to judicial review.

**SEC. 806. AUTHORITIES.**                                                        21 USC 1905.

(a) IN GENERAL.—To carry out the purposes of this title, the Secretary of the Treasury may, under such regulations as he may prescribe, by means of instructions, licenses, or otherwise—

(1) investigate, regulate, or prohibit—

(A) any transactions in foreign exchange, currency, or securities; and

(B) transfers of credit or payments between, by, through, or to any banking institution, to the extent that such transfers or payments involve any interests of any foreign country or a national thereof; and

(2) investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent, or prohibit any acquisition, holding, withholding, use, transfer, withdrawal, transportation, placement into foreign or domestic commerce of, or dealing in, or exercising any right, power, or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest,

by any person, or with respect to any property, subject to the jurisdiction of the United States.

(b) RECORDKEEPING.—Pursuant to subsection (a), the Secretary of the Treasury may require recordkeeping, reporting, and production of documents to carry out the purposes of this title.

(c) DEFENSES.—

(1) Full and actual compliance with any regulation, order, license, instruction, or direction issued under this title shall be a defense in any proceeding alleging a violation of any of the provisions of this title.

(2) No person shall be held liable in any court for or with respect to anything done or omitted in good faith in connection with the administration of, or pursuant to, and in reliance on this title, or any regulation, instruction, or direction issued under this title.

(d) RULEMAKING.—The Secretary of the Treasury may issue such other regulations or orders, including regulations prescribing recordkeeping, reporting, and production of documents, definitions, licenses, instructions, or directions, as may be necessary for the exercise of the authorities granted by this title.

**SEC. 807. ENFORCEMENT.**                                                        21 USC 1906.

(a) CRIMINAL PENALTIES.—(1) Whoever willfully violates the provisions of this title, or any license rule, or regulation issued pursuant to this title, or willfully neglects or refuses to comply with any order of the President issued under this title shall be—

(A) imprisoned for not more than 10 years,

(B) fined in the amount provided in title 18, United States Code, or, in the case of an entity, fined not more than $10,000,000,

or both.

FNK-5826 0031 6

(2) Any officer, director, or agent of any entity who knowingly participates in a violation of the provisions of this title shall be imprisoned for not more than 30 years, fined not more than $5,000,000, or both.

(b) CIVIL PENALTIES.—A civil penalty not to exceed $1,000,000 may be imposed by the Secretary of the Treasury on any person who violates any license, order, rule, or regulation issued in compliance with the provisions of this title.

(c) JUDICIAL REVIEW OF CIVIL PENALTY.—Any penalty imposed under subsection (b) shall be subject to judicial review only to the extent provided in section 702 of title 5, United States Code.

21 USC 1907.     **SEC. 808. DEFINITIONS.**

As used in this title:

(1) ENTITY.—The term "entity" means a partnership, joint venture, association, corporation, organization, network, group, or subgroup, or any form of business collaboration.

(2) FOREIGN PERSON.—The term "foreign person" means any citizen or national of a foreign state or any entity not organized under the laws of the United States, but does not include a foreign state.

(3) NARCOTICS TRAFFICKING.—The term "narcotics trafficking" means any illicit activity to cultivate, produce, manufacture, distribute, sell, finance, or transport narcotic drugs, controlled substances, or listed chemicals, or otherwise endeavor or attempt to do so, or to assist, abet, conspire, or collude with others to do so.

(4) NARCOTIC DRUG; CONTROLLED SUBSTANCE; LISTED CHEMICAL.—The terms "narcotic drug", "controlled substance", and "listed chemical" have the meanings given those terms in section 102 of the Controlled Substances Act (21 U.S.C. 802).

(5) PERSON.—The term "person" means an individual or entity.

(6) UNITED STATES PERSON.—The term "United States person" means any United States citizen or national, permanent resident alien, an entity organized under the laws of the United States (including its foreign branches), or any person within the United States.

(7) SIGNIFICANT FOREIGN NARCOTICS TRAFFICKER.—The term "significant foreign narcotics trafficker" means any foreign person that plays a significant role in international narcotics trafficking, that the President has determined to be appropriate for sanctions pursuant to this title, and that the President has publicly identified in the report required under subsection (b) or (h)(1) of section 804.

**SEC. 809. EXCLUSION OF PERSONS WHO HAVE BENEFITED FROM ILLICIT ACTIVITIES OF DRUG TRAFFICKERS.**

Section 212(a)(2)(C) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(2)(C)) is amended to read as follows:

"(C) CONTROLLED SUBSTANCE TRAFFICKERS.—Any alien who the consular officer or the Attorney General knows or has reason to believe—

"(i) is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), or is or has been a knowing aider, abettor, assister, conspirator, or colluder with others in the

FNK-5826 0032

PUBLIC LAW 106–120—DEC. 3, 1999      113 STAT. 1633

illicit trafficking in any such controlled or listed sub-
stance or chemical, or endeavored to do so; or
"(ii) is the spouse, son, or daughter of an alien
inadmissible under clause (i), has, within the previous
5 years, obtained any financial or other benefit from
the illicit activity of that alien, and knew or reasonably
should have known that the financial or other benefit
was the product of such illicit activity,
is inadmissible.".

SEC. 810. JUDICIAL REVIEW COMMISSION ON FOREIGN ASSET CON-      21 USC 1908.
TROL.

(a) ESTABLISHMENT.—There is established a commission to be
known as the "Judicial Review Commission on Foreign Asset Con-
trol" (in this section referred to as the "Commission").
(b) MEMBERSHIP AND PROCEDURAL MATTERS.—(1) The Commis-
sion shall be composed of five members, as follows:
(A) One member shall be appointed by the Chairman of
the Select Committee on Intelligence of the Senate.
(B) One member shall be appointed by the Vice Chairman
of the Select Committee on Intelligence of the Senate.
(C) One member shall be appointed by the Chairman of
the Permanent Select Committee on Intelligence of the House
of Representatives.
(D) One member shall be appointed by the Ranking
Minority Member of the Permanent Select Committee on Intel-
ligence of the House of Representatives.
(E) One member shall be appointed jointly by the members
appointed under subparagraphs (A) through (D).
(2) Each member of the Commission shall, for purposes of
the activities of the Commission under this section, possess or
obtain an appropriate security clearance in accordance with
applicable laws and regulations regarding the handling of classified
information.
(3) The members of the Commission shall choose the chairman
of the Commission from among the members of the Commission.
(4) The members of the Commission shall establish rules
governing the procedures and proceedings of the Commission.
(c) DUTIES.—The Commission shall have as its duties the
following:
(1) To conduct a review of the current judicial, regulatory,
and administrative authorities relating to the blocking of assets
of foreign persons by the United States Government.
(2) To conduct a detailed examination and evaluation of
the remedies available to United States persons affected by
the blocking of assets of foreign persons by the United States
Government.
(d) POWERS.—(1) The Commission may hold such hearings,
sit and act at such times and places, take such testimony, and
receive such evidence as the Commission considers advisable to
carry out the purposes of this section.
(2) The Commission may secure directly from any executive
department, agency, bureau, board, commission, office, independent
establishment, or instrumentality of the Government information,
suggestions, estimates, and statistics for the purposes of this sec-
tion. Each such department, agency, bureau, board, commission,

113 STAT. 1634        PUBLIC LAW 106–120—DEC. 3, 1999

office, establishment, or instrumentality shall, to the extent authorized by law, furnish such information, suggestions, estimates, and statistics directly to the Commission, upon request of the chairman of the Commission. The Commission shall handle and protect all classified information provided to it under this section in accordance with applicable statutes and regulations.

(3) The Attorney General and the Secretary of the Treasury shall provide to the Commission, on a nonreimbursable basis, such administrative services, funds, facilities, and other support services as are necessary for the performance of the Commission's duties under this section.

(4) The Commission shall receive the full and timely cooperation of any official, department, or agency of the United States Government whose assistance is necessary for the fulfillment of the duties of the Commission under this section, including the provision of full and current briefings and analyses.

(5) No department or agency of the Government may withhold information from the Commission on the grounds that providing the information to the Commission would constitute the unauthorized disclosure of classified information or information relating to intelligence sources or methods.

(6) The Commission may use the United States mails in the same manner and under the same conditions as the departments and agencies of the United States.

(e) STAFF.—(1) Subject to paragraph (2), the chairman of the Commission, in accordance with rules agreed upon by the Commission, shall appoint and fix the compensation of a staff director and such other personnel as may be necessary to enable the Commission to carry out its duties, without regard to the provisions of title 5, United States Code, governing appointments in the competitive service, and without regard to the provisions of chapter 51 and subchapter III or chapter 53 of such title relating to classification and General Schedule pay rates, except that no rate of pay fixed under this subsection may exceed the equivalent of that payable to a person occupying a position at level V of the Executive Schedule under section 5316 of such title.

(2)(A) Any employee of a department or agency referred to in subparagraph (B) may be detailed to the Commission without reimbursement from the Commission, and such detailee shall retain the rights, status, and privileges of his or her regular employment without interruption.

(B) The departments and agencies referred to in this subparagraph are as follows:

    (i) The Department of Justice.
    (ii) The Department of the Treasury.
    (iii) The Central Intelligence Agency.

(3) All staff of the Commission shall possess a security clearance in accordance with applicable laws and regulations concerning the handling of classified information.

(f) COMPENSATION AND TRAVEL EXPENSES.—(1)(A) Except as provided in subparagraph (B), each member of the Commission may be compensated at not to exceed the daily equivalent of the annual rate of basic pay in effect for a position at level IV of the Executive Schedule under section 5315 of title 5, United States Code, for each day during which that member is engaged in the actual performance of the duties of the Commission under this section.

*9*
FNK-5826 0034

PUBLIC LAW 106–120—DEC. 3, 1999          113 STAT. 1635

(B) Members of the Commission who are officers or employees of the United States shall receive no additional pay by reason of their service on the Commission.

(2) While away from their homes or regular places of business in the performance of services for the Commission, members of the Commission may be allowed travel expenses, including per diem in lieu of subsistence, in the same manner as persons employed intermittently in the Government service are allowed expenses under section 5703(b) of title 5, United States Code.

(g) REPORT.—(1) Not later than 1 year after the date of the enactment of this Act, the Commissions shall submit to the committees of Congress referred to in paragraph (4) a report on the activities of the Commission under this section, including the findings, conclusions, and recommendations, if any, of the Commission as a result of the review under subsection (c)(1) and the examination and evaluation under subsection (c)(2). *Deadline.*

(2) The report under paragraph (1) shall include any additional or dissenting views of a member of the Commission upon the request of the member.

(3) The report under paragraph (1) shall be submitted in unclassified form, but may include a classified annex.

(4) The committees of Congress referred to in this paragraph are the following:

(A) The Select Committee on Intelligence and the Committees on Foreign Relations and the Judiciary of the Senate.

(B) The Permanent Select Committee on Intelligence and the Committees on International Relations and the Judiciary of the House of Representatives.

(h) TERMINATION.—The Commission shall terminate at the end of the 60-day period beginning on the date on which the report required by subsection (g) is submitted to the committees of Congress referred to in that subsection.

(i) INAPPLICABILITY OF CERTAIN ADMINISTRATIVE PROVISIONS.— (1) The provisions of the Federal Advisory Committee Act (5 U.S.C. App.) shall not apply to the activities of the Commission under this section.

(2) The provisions of section 552 of title 5, United States Code (commonly referred to as the Freedom of Information Act), shall not apply to the activities, records, and proceedings of the Commission under this title.

(j) FUNDING.—The Attorney General shall, from amounts authorized to be appropriated to the Attorney General by this Act, make available to the Commission $1,000,000 for purposes of the activities of the Commission under this section. Amounts made available to the Commission under the preceding sentence shall remain available until expended.

113 STAT. 1636          PUBLIC LAW 106–120—DEC. 3, 1999

21 USC 1901
note.

**SEC. 811. EFFECTIVE DATE.**

This title shall take effect on the date of the enactment of this Act.

Approved December 3, 1999.

---

LEGISLATIVE HISTORY—H.R. 1555 (S. 1009):
HOUSE REPORTS: Nos. 106–130, Pt. 1 (Select Comm. on Intelligence) and 106–457 (Comm. of Conference).
SENATE REPORTS: No. 106–48 accompanying S. 1009 (Select Comm. on Intelligence).
CONGRESSIONAL RECORD, Vol. 145 (1999):
    May 13, considered and passed House.
    July 20, 21, considered and passed Senate, amended.
    Nov. 9, House agreed to conference report.
    Nov. 19, Senate agreed to conference report.
WEEKLY COMPILATION OF PRESIDENTIAL DOCUMENTS, Vol. 35 (1999):
    Dec. 3, Presidential statement.

○

# Exhibit 2



The Office of National Drug Control Policy estimates that Americans spend approximately $65 billion per year on illegal drugs. With only approximately $1 billion seized per year, domestically, by all Federal agencies combined, no one can claim to have discovered the "holy grail" of drug financial investigations. DEA's revenue denied program comprises a global accounting of DEA's efforts to bankrupt DTOs, especially those with international DTOs that target our communities with their poison. DEA is an agency with global reach, with 86 offices in 62 countries. DEA's financial enforcement strategy is "mission driven" in that we are focused on the flow of money back to the international sources of supply, since this is the very money that is destined to finance the next cycle of illegal drugs that will target our consumer market here in the United States. This is also the money that allows the international DTO's to continue to operate. It is important to us at DEA to carry the fight to the doorstep of those DTOs that spread their poison in the United States and drain billions of dollars each year from our economy.



**$207 million was seized in Mexico City –**
**the largest drug cash seizure ever.**

There is little doubt that the sole reason people sell drugs is for the money. Money serves as both the motivating force and the lifeblood of DTOs. Therefore, attacking the financial infrastructure of DTOs has to play a key role in any viable drug enforcement strategy. DEA's objective with financial investigations is to identify and halt the use of drug proceeds that finance the continued operations of DTOs.

## Financial Investigations Strategy

Since the major DTOs involved in methamphetamine production are also involved in the smuggling of marijuana, heroin, and cocaine, it is virtually impossible to differentiate the source of the drug money by the type of drug. In the case of methamphetamine, payments to

FNK-5826 0037

sources of supply are almost exclusively in the form of currency. Thus, financial investigations relating to the movement of funds to Mexico are not classified or segregated by any particular type of drug. However, illicit drug proceeds can be categorized based on how they are used by the DTOs. Drug proceeds are used to pay sources of supply, to support the infrastructure of the organization, and to acquire personal assets. The "cash on hand" left over can be considered as either part of the organization's working capital or personal wealth.

To significantly reduce the supply of illegal drugs, DEA must focus our efforts on the drug proceeds used to pay the sources of drug supply. Denying the sources of supply revenue from the distribution of drugs will hamper their capability to acquire or produce additional drugs and support their organizations. The higher in the drug distribution chain we can deny the revenue flow, the greater effect this denial will have on the entire distribution network.

Payments to sources of drug supply flow almost exclusively in the form of currency. This currency is handled and transported covertly, just like the drugs that generated it. Thus, the investigation of this component of drug proceeds is a "contraband" investigation, as opposed to an "asset tracing" investigation, which are more traditional money laundering investigations that other agencies are better equipped and more experienced in dealing with than the DEA. DEA, on the other hand, is the best equipped and trained agency to carry out "contraband" investigations. DEA, on the other hand, is well-equipped and trained to carry out "contraband" investigations. Accordingly, DEA "financial investigations" focus on identifying and interdicting those drug proceeds flowing back to the source of drug supply.



**More than $10 million in drug proceeds seized throughout "Operation Plata Sucia"**

In this type of money flow investigation, the financial transactions are also overt acts in the drug conspiracy and, oftentimes, provide the best evidence in linking local drug organizations to their sources of drug supply. Since drug money flows toward the "command and control" of the DTO, as opposed to away from "command and control" like drugs, a money flow investigation enables an investigator to work his/her way up the distribution chain, which is the primary objective of all drug investigations. To ensure maximum effectiveness, DEA money flow investigations are designed to be compatible with, not competitive with, the long-term asset-tracing type investigations that have traditionally been the norm. In fact, whenever DEA is involved in a long-term, asset-tracing type investigation, there is always an agency such as the Internal Revenue Service (IRS) involved as well.

A 2005 DEA study determined that during 2003 and 2004 there were excess U.S. dollars present in Mexico that could not be accounted for from legitimate sources totaling at least $9.2 billion and $10.2 billion, respectively. It is estimated that the four major drugs that are smuggled into the United States from Mexico ( i.e. methamphetamine, heroin, cocaine, and marijuana,) generate as much as $22 billion per year for the sources of supply.

DEA has identified the following as the major money laundering threats relating to movement of drug proceeds to Mexico:

- Bulk currency smuggling to include the transportation organizations that service the Mexican DTOs.
- Mexican currency exchange houses, referred to as Casas de Cambio and Centros Cambiario.
- The remission of drug proceeds through U.S. based money remitters.

FNK-5826 0038

To address these threats, DEA has formulated a strategy that encompasses intelligence-based enforcement, as well as domestic and international collaborative efforts to target the movement of bulk currency and ultimately attack the command and control targets in the United States and Mexico. By working closely with our Federal, state, and local law enforcement counterparts in the United States and our counterparts in Mexico, we exploit the intelligence from bulk currency interdictions to identify, target, and ultimately, prosecute the command and control targets on either side of the border.



**Drug dealers tried to conceal their dirty money in this tire.**

DEA also works closely with the Treasury Department, Financial Crimes Enforcement Network (FinCEN) and the Office of Foreign Assets Control (OFAC) to identify opportunities to apply regulatory sanctions and freezing orders against these Mexican DTOs. Through enforcement operations, analytical analysis of the Bank Secrecy Act, and other financial records, we identify the movement of drug funds. We also target rogue remitter agencies and agents who are complicit in the movement of drug money to Mexico, through criminal enforcement and asset forfeiture.

To carry out our strategy, DEA, through the Office of Financial Operations, has instituted a number of national initiatives, that target bulk currency smuggling and the remission of drug money through U.S. wire remitters.

In October 2004, DEA instituted the Bulk Currency Initiative. The Bulk Currency Initiative is an information sharing vehicle by which our state and local counterparts can share the information they obtain from making a currency seizure, whether it be along the nation's highways or in operation at an airport. Information obtained by DEA in this manner many times can be tied to other investigations throughout the world. The currency seizure itself then becomes an overt act in the drug conspiracy investigation and often helps to identify other co-conspirators within a DTO that were previously unknown. This initiative resulted in an increase in DEA's currency seizures for FY 2005 of over $80 million, from $259 million to $339.6 million, an increase of 31 percent. This initiative continues, and DEA hopes to see similar results for this fiscal year.

To coordinate multi-jurisdictional bulk currency investigations, DEA's Special Operations Division (SOD) instituted the Money Trail Initiative. In the first year and a half, the Money Trail Initiative was responsible for the dismantlement of six national organizations involved in the transportation of bulk currency drug proceeds from various points in the United States to Mexico. As of July 2006, this initiative has resulted in the arrest of 418 defendants and the seizure of $65.4 million in United States currency, $14.5 million in assets, 59.6 metric tons of marijuana, 9.7 metric tons of cocaine, 126.7 kilograms of methamphetamine, 9 kilograms of heroin, 249 vehicles, and 77 weapons. One of these SOD investigations, Operation Choque, resulted in the identification and arrest of Mexican CPOTs Oscar, Miguel, and Luis Arriola-Marquez, and the dismantlement of their organization, which, based on ledgers seized by Mexican authorities, was responsible for the smuggling of at least 14,000 kilos of cocaine into the United States and the smuggling of $240 million out of the United States. Based on information supplied by DEA, Mexican authorities have seized over $18 million of the Arriola-Marquez Organization's assets.

**Domestic efforts**

DEA has 24 Financial Investigation Teams (FITs). These teams are located in each of its 21 domestic field divisions, as well as in our Bogotá and Bangkok Country Offices. Each domestic field division has one FIT located in the same city as its division office, with the exception of

FNK-5826 0039

the Miami Field Division, whose FIT is located in Ft. Lauderdale, Florida, and the Chicago Field Division, which has two FITs based in Chicago.

The FITs are tasked with carrying out DEA's national financial initiatives, providing guidance to other DEA personnel in financial investigations, conducting the more sophisticated financial investigations, and serving as DEA's local point of contact with the financial community. Administrator Tandy has mandated that all DEA investigations include a financial investigation. The FITs are not expected to conduct all DEA financial investigations. However, they do provide guidance, when needed, to other DEA investigators on their financial investigations.



**In 2005, DEA seized $7 million in Operation Cali Exchange.**

DEA has assigned 159 Special Agents, 8 Intelligence Research Analysts, and 3 DIs to the FIT Teams, which averages 7 Special Agents per FIT. With the exception of the Washington D.C. and San Francisco Field Divisions, each FIT is multi-agency, with participation requested and encouraged from Federal, state and local agencies. Current participation by outside agencies is as follows:

- IRS-Criminal Investigation: 12 full time and 4 part time Special Agents
- ICE: 4 full time and 2 part time Special Agents
- FBI: 1 full time Special Agent
- U.S. Postal Inspection Service: 2 part time Postal Inspectors
- National Guard: 3 full time Analyst
- Financial Investigative Contractors: 24 full time and 5 part time
- State & local Police Officers: 63 full time and 5 part time

The Special Agents, Postal Inspectors and Police Officers from these outside agencies conduct drug-related financial investigations jointly with their DEA counterparts. This team effort brings the specialized expertise and jurisdictions of their parent agencies to the table, where all participants have the same access to the DEA databases as their DEA counterparts.

In addition to the FITs, DEA has a number of Special Agent personnel assigned to liaison positions within the Intelligence Community, Department of Defense and the Executive Office of the President (ONDCP) who enhance our ability to conduct financial investigations. These Special Agents have sign-on authority to the databases maintained by these agencies that they need to perform their liaison duties. In addition, DEA has a limited number of Special Agents assigned to other law enforcement agencies. These agents have direct sign-on authority to the databases of the agencies to which they are assigned. One example of this is the ICE-led El Dorado Task Force in New York, where DEA has a full enforcement group assigned.

### International Challenges

Within the United States, regulators and law enforcement have a fairly accurate overview of financial transactions. Particularly after the additional tools provided by the USA PATRIOT Act came into force, law enforcement generally has access to the information it needs to identify and thwart significant money laundering efforts within the United States. However, this same transparency is not present in many other countries, including Mexico. Accordingly, DEA

FNK-5826 0040

DEA / Money Laundering

believes that most drug proceeds are now smuggled out of the United States to Mexico in bulk, rather than inserted into the financial system within the United States.

Because of the lack of transparency of their financial system, the Mexican financial services industry continues to be a facilitator for drug money movement. Although it is a sophisticated financial sector, obtaining financial information from the Mexican financial services industry remains difficult.

However, based on intelligence information from various DEA, ICE, and other United States law enforcement operations, we do know that once bulk currency is delivered to its intended recipients in Mexico, it can take a number of paths. Most commonly, bulk currency is deposited into the Mexican banking system through casas de cambio, centros cambiarios and banks, and then repatriated to the U.S. banking system through correspondent banking and bank note sales to United States institutions. While some of the bulk cash can be used to purchase precursors and equipment for methamphetamine manufacture, it also can be infused into the financial system through Mexican front companies or used to purchase real estate, businesses and other luxury assets in Mexico. In some instances, the bulk cash is converted to larger denominated United States dollars at casas de cambio or centros cambiarios for further smuggling to Colombia or for further smuggling to Panama for delivery to the Panama Free Trade Zone to purchase commodities on behalf of Colombian businesses. The combination of widespread corruption within Mexico, coupled with insufficient regulatory and criminal enforcement, makes disguising and moving drug proceeds in Mexico a relatively safe and simple task.

As part of our strategy to employ regulatory measures against money laundering systems that facilitate drug money laundering, DEA works closely with the FinCEN and other law enforcement agencies. DEA provided information to support the issuance of FinCEN's April 2006 Advisory to all United States financial institutions on the smuggling of bulk cash and the role of Mexican casas de cambio in the repatriation of those drug dollars into the United States banking system. DEA enjoys a very close working relationship with the OFAC. Much of the information used by OFAC to support its designations under the Kingpin and Specially Designated Narcotics Trafficker authorities is provided by DEA.

FNK-5826 0041

Redacted in Full Exhibits : 3-4, 6, 8, 10-13, 18, 25, 30-32
Non-Responsive Exhibits: 5, 7, 9, 14-17, 19-24, 26-29



Registro Público de Panamá

# Exhibit 33

(MERCANTIL) FOLIO Nº 458900 (S) - INSCRIPCIÓN
ASIENTO Nº 1

**MIGRACIÓN A FOLIO REAL ELECTRÓNICO**

**DATOS DE LA SOCIEDAD**
GRUPO WISA, S.A. (SOCIEDAD ANONIMA) UBICADA EN PROVINCIA PANAMÁ
DURACIÓN PERPETUA
DESCRIPCIÓN DEL CAPITAL EL CAPITAL AUTORIZADO SERA DE QUINIENTAS (500) ACCIONES COMUNES SIN
VALOR NOMINAL. LAS ACCIONES SERAN EMITIDAS UNICAMENTE EN FORMA NOMINATIVA.

REPRESENTANTE: EL PRESIDENTE EN AUSENCIA PODRA EJERCER EL SECRETARIO Y EN DEFECTO CUALQUIER OTRO
DIGNATARIO INDISTINTAMENTE.

PRESIDENTE:  ABDUL MOHAMED WAKED FARES

SECRETARIO:  MOHAMED ABDO WAKED DARWICH

SUSCRIPTOR:  LUCIA TOUZARD ROMO

SUSCRIPTOR:  JOHNNIE GUERRA

DIRECTOR:  ABDUL MOHAMED WAKED FARES

DIRECTOR:  LUCIA TOUZARD

DIRECTOR:  MOHAMED ABDO WAKED DARWICH

TESORERO:  LUCIA TOUZARD

AGENTE RESIDENTE:  LUCIA TOUZARD

ESTE ASIENTO REGISTRAL HA SIDO PRACTICADO EN LA ENTRADA 92037270/2014 (0) PRESENTADA EN ESTE
REGISTRO EL DÍA 21/11/2014 A LAS 12:24 PM

**DOCUMENTOS PRESENTADOS**
FORMULARIO DE CERTIFICADO DE FECHA 21/11/2014

LOS DERECHOS DE CALIFICACIÓN Y REGISTRO ASCIENDEN A TREINTA BALBOAS (B/. 30.00)

Compulsada propósitos informativos solamente

Identificador Electrónico: CCAF8C75-4C57-408D-9EAE-098311F3BD30
Registro Público de Panamá - Vía España, frente al Hospital San Fernando
Apartado Postal 0830 - 1596 Panamá, República de Panamá - (507)501-6000
Página: 1 de 1
FNK-5826 0043

1

| | |
|---|---|
| Folio / Finca / Ficha | (MERCANTIL) Folio Nº 458900 (S) |
| Fecha de Inscripción | 21/07/2004 |
| | |
| Identificación de la Persona | GRUPO WISA, S.A. |
| Tipo de Organización | SOCIEDAD ANONIMA |
| Status | VIGENTE |
| Tipo de Moneda | Acciones sin valor nominal |
| Capital Social | |
| Vigencia | PERPETUA |
| Domicilio | PROVINCIA PANAMÁ |
| Observaciones | |

**Elementos Inactivos**

Derechos/Actos/Otras Operaciones        Fecha de Inscripción    Asiento
Asiento Electrónico Nº 1 (Migración a Folio Electrónico)   24/11/2014   Ver

**Prelación**

| Nº de Entrada / Nº de Asiento | Tipo de entrada | Tipo de Trámite | Estado |
|---|---|---|---|
| 92587/2004 (0) | Registro | PACTO, Derechos de Calificación | Listo para entrega como Trámite Agotado |
| 109601/2004 (0) | Registro | ACTA, Derechos de Calificación | Listo para entrega como Trámite Agotado |
| 172135/2004 (0) | Registro | FUSION, Derechos de Calificación | Entregado como Salida sin Registro |
| 6283/2005 (0) | Registro | FUSION, Derechos de Calificación | Listo para entrega como Trámite Agotado |
| 158881/2010 (0) | Registro | ACTA, Derechos de Calificación | Listo para entrega como Trámite Agotado |
| 81481/2012 (0) | Registro | CONSTITUCION DE SOCIEDAD ANONIMA, Derechos de Calificación | Entregado como Salida sin Registro |
| 192782/2012 (0) | Registro | MODIFICACIONES A LA CONSTITUCION DE LA SOCIEDAD, Derechos de Calificación | Listo para entrega como Trámite Agotado |

**Miembros Relacionados**

| Cargo | Miembro |
|---|---|
| Presidente | ABDUL MOHAMED WAKED FARES |
| Secretario | MOHAMED ABDO WAKED DARWICH |

FNK-5826 0044
8/14/2015

**2**

| | |
|---|---|
| Suscriptor | LUCIA TOUZARD ROMO |
| Suscriptor | JOHNNIE GUERRA |
| Director | ABDUL MOHAMED WAKED FARES |
| Director | LUCIA TOUZARD |
| Director | MOHAMED ABDO WAKED DARWICH |
| Tesorero | LUCIA TOUZARD |
| Agente Residente | LUCIA TOUZARD |
| REPRESENTANTE | EL PRESIDENTE EN AUSENCIA PODRA EJERCER EL SECRETARIO Y EN DEFECTO CUALQUIER OTRO DIGNATARIO INDISTINTAMENTE. |

FNK-5826 0045
8/14/2015

3

# Exhibit 34

Subscribe   home   vip interviews   countries   sectors   events   awards   media & news   shop

SIGN UP  |  LOG IN



Panama
2014

TABLE OF CONTENTS

DIPLOMACY

ECONOMY

  Review: Economy
  Tailored Solutions

  Interview
  Leopoldo Benedetti, Former General
  Manager, Colón Free Trade Zone
  (FTZ)

  Focus: Special Zones
  Zoned For Growth

  B2B: Zone Management
  Pitch Your Place

  Focus: Canal Expansion
  Lock 'N Load

  Forum: Why Panama?
  The Place To Be

  Interview
  Abdul Mohamed Waked Fares,
  President, Grupo Wisa

FINANCE

ENERGY & MINING

INDUSTRY

TELECOMS & IT

TRANSPORT

REAL ESTATE & CONSTRUCTION

AGRICULTURE

HEALTH & EDUCATION

TOURISM

EXECUTIVE GUIDE

# WHAT DO YOU NEED?

**Panama 2014 | ECONOMY | INTERVIEW**

       3 minute read

TBY talks to **Abdul Mohamed Waked Fares, President of Grupo Wisa**, on the rebranding of the company, expanding the group, and the Soho Project.



**BIOGRAPHY**

Abdul Mohamed Waked Fares graduated from the University of Lebanon after studying Business Administration. In 1964, he established Waked Internacional, which today is known as Grupo Wisa. In Colón Free Trade Zone. In 1992, he opened up the Duty Free Division, which currently has operations in 10 countries with 59 stores in 12 international airports in Mexico and Central and South America. In 1994, Grupo Wisa established local market subsidiaries in a number of Central and South American countries, and in 1996 the group started to open up local retail stores, which now total 66 in numerous countries.

**What was the reason behind the rebranding of the company in 2005?**
In 2005, we changed our name from Waked Internacional to Grupo Wisa in order to give uniformity to the business activities of the company, and to project a solid and reputable brand name. Waked is a common surname in Lebanon and there are many companies under that name; hence, people tended to think that all Waked companies had something to do with us.

**What is the main activity Grupo Wisa engages in at the moment?**
We have a diverse business portfolio, and our main activity is perfumes and fragrances. Newspapers are another one of our main activities; we own the newspapers El Siglo and also La Estrella, the oldest paper in the country, and among the oldest ones in Latin America. They are two of the main newspapers in Panama, and we have high expectations for the future of these titles.

**What is the importance of the Soho project for Grupo Wisa?**
This is a project that was started some six years ago by a Spanish entrepreneur, who subsequently faced some economic difficulties in making the project a reality. I ended up acquiring firstly 50% of the shares and later on a greater percentage of them. Today, the Soho project is the main commercial investment project in the country after the Canal. The project has been able to move forward thanks to the support of local banks, especially Bancolombia and Banistmo. We are talking about two office towers and one Ritz Carlton Hotel tower. In addition, 120 stores will be constructed featuring famous brands such as Louis Vuitton, Chanel, Dior, Prada, Valentino, Burberry, Fendi, Rolex, Mercurio, Carolina Herrera, YSL, Bvlgari, Bottega Veneta, Jimmy Choo, Ralph Lauren, and many others. We already have all these contracts signed, and I believe we will open the doors by the end of 2014. To date, we are talking about an investment of some $360 million, including constructing underground parking for over 3,000 vehicles. This project has had international expertise in its design and construction. One of the towers will be named after Banistmo bank.

**How has the company expanded its international profile in the last decade?**
We have operations in almost all Central American and some South American markets. Our main future focus will be on the Southern Cone. For example, we opened the first Burberry store in Chile. I also want to enter Brazil, despite the legal and tax difficulties this represents.

**What role does the Colón Free Trade Zone in Panama play in the group's activities?**
Initially, the zone was one of the reasons why we moved to Panama; today, it is a logistics center for us from where we bring European products and redistribute them among our subsidiaries. It is not a business center, rather it is a logistics hub. This is due to the fact that over the years we have ended up assuming the entire distribution chain for our business activities, prior to that we used to work more with intermediaries. Despite the increase in operating costs, we knew this was the way to succeed, and time has proved this right.

**What is the significance of Fundacion La Riviera for Panamanian society?**
The foundation is a personal project based on the idea that I have always believed as a businessperson that you have to give back as much as you can from what you achieve. I am extremely thankful for the work done by the management board of the foundation. My daughters have also been an essential part in the development of the foundation. The main goals of Fundacion La Riviera are education, healthcare, child welfare, and the alleviation of poverty. My future plan foresees the professionalization of the foundation in terms of having its own headquarters, better facilities, and more resources. For

FNK-5826 0046

9/14/2015

Abdul Mohamed Waked Fares: What Do You Need? - The Business Year                    Page 2 of 2

example, we want a space where we can set up a community center to provide training, food and care for low-income families.

READ THESE NEXT



**Panama**
FINANCE
VIP INTERVIEW

**In the Beginning**

"We believe in every line of business, and that's why we rank among the top four in every line."



**Panama**
FINANCE
INTERVIEW

**Quite A Location**

TBY talks to Alberto Diamond R., Superintendent of the Superintendency of Banks of Panama, on the ins and outs of the Panamanian banking sector and its regulatory framework.



**Panama**
REAL ESTATE & CONSTRUCTION
INTERVIEW

**Bricks & Mortar**

TBY talks to Juan Carlos Sotillo Escala, Director General of Sotillo &amp; Company, on the future of the market.



**Panama**
INDUSTRY & MINING
VIP INTERVIEW

**The Rum Diaries**

"The quality of our rum has a lot to do with our success."

The key players and their stories are all in The Business Year



Copyright © 2011-2015     |     Terms of Use     |     About Us     |     Contact Us     |     Work For TBY

FNK-5826 0047
9/14/2015

Non-Responsive Exhibits: 35-42

Miércoles, 7 de octubre de 2015.

**LaPrensa** / Panorama

# Asocian a Grupo Wisa con evasión en Guatemala

Varios funcionarios guatemaltecos están detenidos por aprobar normas que supuestamente propiciaron una millonaria evasión fiscal.

carlos alberto vargas yolandA sandoval  |  02 ago 2015 - 00:26h

TEMAS: Panorama



Grupo Wisa opera en el aeropuerto La Aurora tiendas bajo el nombre empresarial La Riviera. Republicagt.com

El Ministerio Público de Guatemala arrestó al exjefe de la Superintendencia de Administración (SAT) Rudy Villeda (2009-2012) por aprobar una norma que supuestamente favoreció a las tiendas del Grupo Wisa de Panamá, ubicadas en el Aeropuerto Internacional La Aurora, para evadir, por lo menos, $7.7 millones al fisco de esa nación.

Según reportes de la agencia Acan-Efe y del diario El Periódico, de Guatemala, se arrestaron a otros cinco exfuncionarios de Aduanas vinculados a la aparente red de corrupción y otros siete están prófugos, entre ellos, una panameña, representante de Grupo Wisa, se encuentra prófuga.

Según la fiscal contra Delitos Administrativos, Heidi Tamara de León, durante la gestión de Villeda se autorizaron normas con las que Tiendas Libres de Guatemala (TLG) o La Riviera, que forma parte de Grupo Wisa de Panamá, pudo haber evadido el dinero.

La fiscal informó que el monto podría ser "mucho mayor" del calculado hasta la fecha, porque aún no se contabilizan los impuestos que habría dejado de pagar de 2013 a la fecha.

Las normas aprobadas por Villeda permitían que la tienda funcionara como depósito aduanero privado y a su vez como tienda libre de impuestos.

Según los reglamentos tributarios de la SAT en ese país, un almacén de depósito solo puede mantener la mercadería en tránsito sin pagar impuestos, pero no puede comercializarla sin antes pagar los tributos para su internación. Sin embargo, la SAT cambió su normativa para que la tienda operara como duty free.

La operación de este tipo de establecimientos solo puede ser aprobada por el Congreso de la República.

Panameña prófuga

FNK-5826 0049

Asocian a Grupo Wisa con evasión en Guatemala

Además de Villeda, los medios periodísticos reportaron la captura de Óscar Humberto Funes, exintendente de Aduanas; Mario Raúl Guzmán Marroquín, exsupervisor de Programación de Auditoría; Mayra Patricia Rodas Ruano, exjefa de Unidad de Normas y Procedimientos, y Lidia Lucrecia Roca Morales, exjefa de Gestión Aduanera de la SAT.

Precisan que la fiscalía emitió orden de captura internacional contra tres de siete prófugos por este caso, entre estos figura Lucía Touzard Romo, representante de Grupo Wisa de Panamá. Sin embargo, en la página web de la Interpol aún no se ha incluido su nombre en la lista de buscados.

Grupo Wisa entró en Guatemala a finales de 2007, luego de que la Dirección General de Aeronáutica Civil le otorgó un contrato de arrendamiento de 10 locales en el Aeropuerto Internacional La Aurora, por un período de 15 años.

Juan Luis Correa, vocero del grupo, negó rotundamente la vinculación del conglomerado económico con cualquier caso de corrupción en Guatemala y también negó que Touzard Romo esté prófuga.

"La Riviera ha pagado todos sus impuestos a lo largo de nueve años que tenemos en Guatemala. Se ha cumplido con todas las normas y leyes. Adicional, tenemos auditorías de diciembre de 2014, donde se da cuenta de que las operaciones están dentro del marco de la ley".

Correa detalló a este medio, vía telefónica, que los abogados del grupo comercial viajarán esta semana a Guatemala para mostrarle a la Fiscalía "que estamos en regla". Además, aseguró que en este caso es obvia la presencia de "intereses que nos quieren hacer daño".

Sin embargo, "estamos muy tranquilos de que todo el accionar de la empresa ha sido en el marco de la ley".

Grupo Wisa difundió un comunicado, en Guatemala, en el que detalla que todos sus permisos y contratos vigentes para operar fueron debidamente emitidos por las instituciones del Estado, siguiendo los más altos estándares éticos y en apego a la ley.

"Nos sentimos consternados por el agravio en el que nos vemos sometidos, vinculándonos en procesos judiciales y desprestigiando nuestro nombre y honorabilidad, cuando hemos sido transparentes en el manejo de toda la información contable, fiscal y contractual...".

## MÁS NOTICIAS DE PANORAMA

La conexión Corcione-Moncada

264 COIF privados desafían normas

Auditoría está manipulada, Giselle Burillo

Ganaderos se organizan contra el abigeato

Reacios al diálogo, ngäbes se preparan para la lucha

Guabito, sin agua y sin energía eléctrica

Restringen paso por el puente sobre el río Guaniquito

Cabalgatas animan las festividades de Santiago apóstol

Personas con movilidad reducida exigen adecuaciones

Merkel buscará su cuarto mandato

Kerry llega a Egipto para reactivar alianza estratégica

Erekat va a Tel Aviv; choques en Cisjordania

Familia de Bin Laden muere en accidente

El Salvador no pactará con pandillas

Levantan huelga; instalan mesas

FARC niegan violencia sexual a mujeres

MUD llama a nueva movilización nacional

Camargo Correa dirá cómo operaba el cartel

[ KNOCKOUT ]: El poder de todo medio llega hasta donde su credibilidad se lo permite

## COMENTARIOS

Los comentarios son responsabilidad de cada autor que expresa libremente su opinión y no de Editorial por la Democracia S.A.

FNK-5826 0050

2

<u>Exhibit 43</u>

Spanish text:

Asocian a Grupo Wisa con evasion en Guatemala.

El Ministerio Público de Guatemala arrestó al exjefe de la Superintendencia de Administración (SAT) Rudy Villeda (2009-2012) por aprobar una norma que supuestamente favoreció a las tiendas del Grupo Wisa de Panamá, ubicadas en el Aeropuerto Internacional La Aurora, para evadir, por lo menos, $7.7 millones al fisco de esa nación.

Investigator translation:

The Public Ministry of Guatemala arrested the former chief of the Superintendencia de Administración (SAT), Rudy Villeda, on charges of $7.7 million in tax evasion in a deal that provided favorable treatment to Grupo Wisa.

Exhibit Redacted in Full: 44

FNK-5826 0052

Exhibit 45



Inicio /Internacionales /Mundo

# Grupo Wisa se defiende ante acusaciones de evasión fiscal en Guatemala

Lunes, 03 Agosto 2015 10:11

Categoría: Economía

Tagged under

*Último Minuto,*

Visto: 279

El grupo Wisa mediante un comunicado aclara que desde el 2008 que inició las operaciones en Guatemala a raíz de la invitación de la Dirección General de  Aeronáutica Civil, en las tiendas Duty Free en los principales aeropuertos de América Latina mantiene"todos los permisos y contratos para operar, fueron debidamente emitidos por las instituciones del estado...y siguen vigentes".

"A diferencia de los otros operadores, Grupo Wisa S.A. pago un derecho de llave y nuestra filial, tiendas libres de Guatemala S.A., ha cumplido

FNK-5826 0053

siempre con todas sus obligaciones legales, tribuitarias y de cualquier otra indole y prueba de ello es que cada una de las auditorías fiscales a las que hemos sometido en el cumplimiento de las normas vigentes de este país, nos han ratificado que la operación cumple con las leyes y esta al día con todos los deberes tributarios y hemos pagado la totalidad de los impuestos exigidos en cumplimiento de la ley" señala el comunicado.

La empresa dice sentirse "consternados por el agravio a que nos vemos sometidos, fomentado por grupos con intereses económicos creados en Guatemala, vinculándonos en procesos judiciales y desprestigiando nuestro nombre cuando hemos sido transparentes en el manejo de toda la información contable, fiscal y contractual".

Finalmente, reiteraron que continuará realizando su labor y agradecieron "las muestras de solidaridad y respaldo de nuestros colaboradores, clientes y proveedores en general". "Confiamos qe se nos brinden todas las garantías del debido proceso y seguridad jurídica a nuestras inversiones como lo establece la Constitución de Guatemala" resaltan.

Grupo Wisa S.A. se le investiga en Guatemala por una presunta evasión fiscal por $7.6 millones según medios de este país.

Foto Ilustrativa EFE

blog comments powered by DISQUS                    back to top

Tweet





FNK-5826 0054

<u>Exhibit 45</u>

Spanish text:

Grupo Wisa S.A. se le investiga en Guatemala pur una presunta evasion fiscal por $7.6 millones.

Investigator translation:

Grupo Wisa S.A. is under investigation in Guatemala for $7.6 million in tax evasion.

Non-Responsive Exhibit: 46

FNK-5826 0056

Exhibit 47



# Abdul Waked

*Following a successful businessman*

## CV Abdul Waked (ESPAÑOL)

### Abdul Mohamed Waked Fares

GRUPO WISA, S.A.

Calle 15 y Avenida Roosevelt, Zona Libre de Colon

(507) 433-7000





**DATOS PERSONALES**

*Cedula de Identidad:*    N-19-804

*Lugar y Fecha de Nacimiento:*    Líbano, 9 de diciembre de 1948

*Estado Civil:*    Casado, 5 hijos

*Idioma:*    Árabe lengua materna

Español: fluido

Ingles: Intermedio

## EDUCACIÓN

» Universidad del Líbano

Administración de Empresas

» Colegio Calasanz, Medellín-Colombia

Bachiller

## ANTECEDENTES PROFESIONALES

*GRUPO WISA, S.A.:* 1984 –Presente

Socio – Fundador

Presidente y Representante Legal

» Inicio operaciones en Panamá, bajo el nombre de WAKED INTERNACIONAL, S.A., (hoy en día GRUPO WISA, S.A.) con sede principal en Zona Libre de Colón. Ampliando posteriormente sus operaciones a los mercados de Colombia, Costa Rica, Ecuador, El Salvador, Nicaragua, Hondu ⊙ Follow ice, Bolivia, Guatemala, México y recientemente en el Cono Sur.

» Grupo Wisa, S.A., es líder en el merca[...]a de productos de lujo como perfumes, cosméticos, electrónica, carte[...]igarrillos con más de 120 tiendas en mercado local y más de 70 en el área d[...]rtos internacionales en toda la región.

» Grupo Wisa, S.A., ha sido designada c[...]clusivo de prestigiosas marcas a nivel internacional como lo son Jimmy Choo[...] entre otras.

» Igualmente Grupo Wisa, su holding y [...]participación accionaria y operativa en las áreas de Banca, Seguros, Prensa Es[...] La Estrella de Panamá) y en diversos proyectos inmobiliarios de reconocido [...]

Follow "Abdul Waked"

Get every new post delivered to your inbox.

Enter your email address

Sign me up

Build a website with WordPress.com

## PREMIOS Y RECONOCIMIENTOS

» **Orden Nacional de la Legión de Honor** de Francia por su reconocimiento como empresario.

» **Bizz Awards**.

Reconocimiento y Distinción por Empresa Inspiracional

Reconocimiento por Líder Mundial de Negocios.

Premio por Excelencia en el Liderazgo Empresarial

Premio por Excelencia en el Servicio.

Premio a la Excelencia en Gestión de Mercadeo y Administración Empresarial

FNK-5826 0058

2

## FUNDACIONES Y ASOCIACIONES

» **Fundación La Riviera:** Socio Fundador. Destinada a la ayuda social de la niñez y la educación Panameña.

» **The Smile Train:** Benefactor de la Fundación para tratamientos de niños con paladar hendido.

» **The Breast Cancer Foundation:** Benefactor.

» **Funda Ayuda:** Programas de Concientización y detención del Cancer de Mama y Prostata. Benefactor.

» **Asociación de Usuario de la Zona Libre de Colon:** Miembro

» **Cámara de Comercio e Industrias de Panama:** Miembro

» **Asociación Suramericana de Tiendas Libres. ASUTIL:** Miembro

## Social Media Presencia:

» About.me
» Google+ Profile
» Facebook Page
» Twitter Account
» YouTube Account

**Share this:**



Be the first to like this.

ABDUL WAKED   CV   ESPANOL   PANAMA   SPANISH

········································································

# Leave a Reply

Enter your comment here...

» Mr. Abdul Waked & other at the launch of

*Create a free website or blog at WordPress.com. The Vintage Camera Theme.*

3

FNK-5826 0059

Non-Responsive Exhibits: 48, 50-52

Exhibit Redacted in Full: 49

FNK-5826 0060

# Exhibit 53

Martes, 13 de octubre de 2015.

**La Prensa** / Economía

DEFRAUDACIÓN ADUANERA

# Cierran diez locales de 'La Riviera' en Guatemala

Wilfredo Jordán, Luis Burón-Barahona   09 oct 2015 - 05:21h

TEMAS: Guatemala   Impuestos   Economía



El Ministerio Público de Guatemala clausuró ayer las 10 oficinas de La Riviera en el aeropuerto La Aurora por supuesta defraudación fiscal.  Tomada del diario La Hora

La Fiscalía contra Delitos Administrativos del Ministerio Público de Guatemala **cerró ayer 10 locales duty free** de la cadena de fragancias, maquillaje y tratamiento 'La Riviera' en el aeropuerto La Aurora por supuesta **defraudación aduanera**.

La Riviera es el nombre comercial de Tiendas Libres de Guatemala, S.A. que forma parte de Grupo Wisa, S.A., una empresa panameña con operaciones en más de 14 países y en los principales aeropuertos de América Latina.

"Cuando se constituyó Tiendas Libres de Guatemala S.A (La Riviera) hubo irregularidades, ya que al debían tener la autorización del congreso para ser una tienda libre y no pagar impuestos. En Guatemala solo existen tres entidades que cuentan con ese permiso. Entre ellos no estaba La Riviera. Aún así la Superintendencia de Administración Tributaria (SAT) los autorizó", explicó a este diario la fiscal contra Delitos Administrativos, Heidy de León.

En Guatemala solo hay tres organizaciones no gubernamentales autorizadas para administrar los negocios de duty free: Sociedad Protectora del Niño, Asociación Centro de Integración Familiar y la Asociación de Señoras de la Caridad San Vicente de Paúl.

Estas organizaciones utilizan los beneficios que se generan a través de los duty free para servicios sociales.

Es un sistema diferente al que se utiliza en otros países como Panamá, donde la operación de duty free es abierta y se otorga mediante una concesión a través de una licitación.

Las investigaciones demuestran que entre 2009 y 2012, la franquicia de belleza **alcanzó evasiones de impuestos cerca de los $7.5 millones (59 millones de quetzales)**,  según contó Julia Barrera, vocera del Ministerio Público guatemalteco. "Por el momento la investigación solo arroja resultados en estas fechas. Pero las pesquisas continúan", aseguró.

Por este proceso, adelantó De León, la abogada panameña Lucía Touzard Romo sería la única representante de la empresa en enfrentar penalmente este caso, ya que es la firmante en los documentos de instalación de la franquicia.

**Touzard Romo, quien es también representante de Grupo Wisa de Panamá, tiene orden de captura internacional y podría enfrentar entre cinco y**

Cierran diez locales de 'La Riviera' en Guatemala                                    Page 2 of 3

ocho años de prisión por este delito.

Consultado sobre el cierre de los locales en Guatemala, Juan Luis Correa, vicepresidente corporativo de Grupo Wisa, dijo que la empresa tenía autorización para prestar los servicios.

"Nosotros operamos bajo el régimen especial determinado por el Código Aduanero Uniforme Centroamericano (Cauca) y el Recauca. Y la SAT autorizó la operación, al igual que lo hizo la Dirección de Aeronáutica", afirmó Correa.

Correa dijo que esta figura permite traer mercancías del extranjero con suspensión de los derechos arancelarios de importación y del impuesto al valor agregado, debido a que la mercadería no entra al país.

Añadió que hoy presentarán un recurso de amparo contra el "cierre temporal decretado para que se reanuden las operaciones cuanto antes, a fin de minimizar los daños que se le van a causar a los más de 100 colaboradores guatemaltecos y a sus familias que dependen de este trabajo para vivir".

En la fundación de Tiendas Libres de Guatemala también figura Mohamed Abdo Waked Darwich, a quien no se le acusa de ningún delito. **Waked Darwich es hijo de Abdul Waked, presidente de Grupo Wisa, en Panamá.**

Las otras personas que han sido requeridas por la justicia chapina son los funcionarios de la SAT que participaron en la instalación de 'La Riviera'.

Se trata de Rudy Baldemar Villeda Vanegas, exjefe del SAT entre 2008 y 2012; Óscar Humberto Funes Alvarado, exintendente de Aduanas; Mayra Patricia Rodas Ruano, ex jefa de normas de Aduanas; y Lidia Lucrecia Roca Morales, exjefa de Gestión Aduanera de la SAT.

**LLEGADA**

Según una investigación de varias entregas por el diario Siglo 21, el gobierno de Óscar Berger modificó en 2007 el Acuerdo Gubernativo 939-2002 para permitir que la Dirección General de Aeronáutica Civil (DGAC) pudiera emitir invitaciones a "personas individuales o jurídicas de reconocido prestigio nacional y/o internacional para ser arrendatarias de áreas dentro de los aeródromos". Se estipulaba también arrendamientos entre 5 a 15 años.

El medio chapín asegura, y demuestra mediante varios documentos, que **la DGAC solo emitió la invitación a una sola empresa: Grupo Wisa.**

Precisamente, las únicas tres organizaciones benéficas aprobadas por el congreso guatemalteco para mantener negocios de dutyfree en el Aeropuerto La Aurora le manifestaron a Siglo 21 desconocer esta invitación supuestamente abierta.

El Grupo Wisa no tardó mucho en aceptar la invitación y envió una oferta, la que fue acogida sin problemas por el gobierno guatemalteco.

"Los 10 locales suman un área de 1,229.55 metros cuadrados por los cuales el Grupo Wisa pagará, en concepto de derecho de explotación, y por única vez, poco más de $4.6 millones", advirtió el diario chapín entonces.

En su investigación, Siglo 21 detectó varias irregularidades en el contrato de alquiler. Por ejemplo, la dirección física de Tiendas Libres de Guatemala. En la supuesta oficina de esta sociedad, ubicada en la Zona 2 de la capital chapina, realmente operaba el Centro Educativo Integral de Guatemala.

**OTRAS NOTICIAS DE ECONOMÍA**






22.3% de los panameños es pobre, según estadísticas del MEF

FMI prepara la receta para capear la transformación económica mundial

El jefe de Volkswagen en EU admite que la compañía quiso ocultar emisiones

Canal de Panamá bate récord de carga con 340 millones de toneladas

**COMENTARIOS**

Los comentarios son responsabilidad de cada autor que expresa libremente su opinión y no de Editorial por la Democracia S.A.

16 Comentarios      La Prensa                                    ↑ Acceder ⌄

Recomendar    ⬚ Compartir                                    Ordenar por los más nuevos ⌄

  Únete a la discusión...

  Atenea · hace 4 días
a mi me encanta La Riviera :'(
· Responder · Compartir

  BURLA · hace 4 días
Que verguenza, la corrupcion panameña rebasa las fronteras.
· Responder · Compartir

**Exhibit 53**

Spanish text:

La Fiscalía contra Delitos Administrativos del Ministerio Público de Guatemala cerró ayer 10 locales duty free de la cadena de fragancias, maquillaje y tratamiento 'La Riviera' en el aeropuerto La Aurora por supuesta defraudación aduanera.

Las investigaciones demuestran que entre 2009 y 2012, la franquicia de belleza alcanzó evasiones de impuestos cerca de los $7.5 millones (59 millones de quetzales), según contó Julia Barrera, vocera del Ministerio Público guatemalteco.

Por este proceso, adelantó De León, la abogada panameña Lucía Touzard Romo sería la única representante de la empresa en enfrentar penalmente este caso, ya que es la firmante en los documentos de instalación de la franquicia. Touzard Romo, quien es también representante de Grupo Wisa de Panamá, tiene orden de captura internacional y podría enfrentar entre cinco y ocho años de prisión por este delito.

En la fundación de Tiendas Libres de Guatemala también figura Mohamed Abdo Waked Darwich, a quien no se le acusa de ningún delito. Waked Darwich es hijo de Abdul Waked, presidente de Grupo Wisa, en Panamá.

Investigator translation:

The Prosecutor for Administrative Offenses of the Public Ministry of Guatemala closed ten La Riviera duty free stores at La Aurora Airport that sell fragrances, makeup, and other treatments for alleged customs fraud.

The investigations show that between 2009 and 2012, the stores evaded taxes of almost $7.5 million, according to a spokesperson for the Guatemalan Public Ministry.

In this process, the Panamanian attorney, Lucia Touzard Romo, is the only representative of the company that will face criminal charges as she was the sole signatory on the documents establishing the Guatemalan franchise. Touzard Romo, who is a legal representative of Grupo Wisa of Panama, has an international arrest warrant and could face five to eight years in prison for the crime.

Tiendas Libres de Guatemala (Duty Free Shops of Guatemala) figure Mohamed Abdo Waked Darwich, who has not been accused of any crime. Waked Darwich is the son of Abdul Waked, the President of Grupo Wisa of Panama.

3

Non-Responsive Exhibits: 54-55

FNK-5826 0064

Exhibit 56 Page 1 of 1

..:: PanamaEmprende -- ::..

Ministerio de Comercio e Industrias
02:48 pm

República de Panamá
Lunes, 02 de Noviembre de 2015



panamaemprende   **Facilitando la creación de empresas** en un clima de negocios con eficiencia y transparencia   MINISTERIO DE COMERCIO E INDUSTRIAS

Inicio    Acerca de PanamaEmprende    Fundamento Legal    Consultas    Contáctenos    Guía de Usuario

▶ **Consultas**                                                      Vea También

Realizar una Nueva Búsqueda de Aviso de Operación          Requisitos para el Registro

**Resultado de la Búsqueda del Aviso de Operación**         Actividades Exceptuadas

| | |
|---|---|
| Número de Aviso de Operación: | 645451-1-458900-2010-195091 |
| Nombre Comercial: | GRUPO WISA |
| Razón Social/Dueño: | GRUPO WISA S A |
| RUC: | 645451-1-458900 DV 12 |
| Fecha de Generación: | 05-Ene-2010 |
| Representante Legal: | WAKED FARES ABDUL MOHAMED |
| Ubicación: | COLÓN, COLON, BARRIO NORTE |
| Urbanización: | ZONA LIBRE DE COLON AREA COMERCIAL |
| Calle: | CALLE 15 Y AVENIDA ROOSVELT |
| Casa: | |
| Edificio: | GRUPO WISA |
| Apartamento: | 6-A-1 |
| Actividad Comercial: | Empresa establecida en Zona Libre de Colón. Importación y re-exportación de mercancías. |
| Capital Invertido: | 10,000.00 |
| Estatus: | ACTIVO |

Tipo de Contribuyente

Disponibilidad de Nombres

Cálculo del Pago Único

[ Regresar ]          [ Imprimir Certificado ]

Copyright © 2007, Secretaría de la Presidencia para la Innovación Gubernamental - Declaración de Privacidad

11/2/2015

https://www.panamaemprende.gob.pa/publico.php?pag=certificAO&anio=2010&ao=551...

FNK-5826 0065

Mapa                              Exhibit 57                    Page 1 of 3

# MAPA

ej.: San Francisco



Grupo Wisa, Zona Libre
de Colón
C/ 15, entre Ave. Sta.
Isabel y Ave. Roosevelt,
Zona Libre de Colón,
Ciudad de Colón,
Rep. de Panamá
Teléfono: (+507) 433 -
7000



Grupo Wisa, Ciudad de
Panamá
Ciudad de
Panamá , Rep. de
Panamá



Google

(https://maps.google.com/maps?ll=9.353327,-79.895154&z=7&t=m&hl=en-
US&gl=US&mapclient=apiv3)        Map data ©2015 Google, INEGI

FNK-5826 0066

## CORPORATIVO

Quiénes Somos (../../../../../../quienes-somos/)

Mision / Vision (../../../../../../mision-vision/)

Organización (../../../../../../quienes-somos/organizacion/)

Intranet (../../../../../../intranet/)

Unete a nuestro equipo (http://pedidos.grupowisa.com:7778/pls/apex/f?p=124:2)

## FUNDACIÓN LA RIVIERA

♥   (../../../../../../fundacion-la-riviera/)



## NUESTRAS TIENDAS

FNK-5826 0067

# MAPA

ej.: San Francisco



Grupo Wisa, Zona Libre
de Colón
Ciudad de Colón , Rep.
de Panamá



Grupo Wisa, Ciudad de
Panamá
Torre Generali, piso 11
y 12, C/ 54 Este, Av.
Samuel Lewis,
Ciudad de Panamá,
Rep. de Panamá
Teléfono: (+507) 210 -
8100

Grupo Wisa, Ciudad de Panam

Torre Generali, piso 11 y 12, C/ 54 Este, Av
Ciudad de Panamá,
Rep. de Panamá
Teléfono: (+507) 210 - 8100

Google

(https://maps.google.com/maps?ll=8.984851,-79.521676&z=17&t=m&hl=en-
US&gl=US&mapclient=apiv3),-79.5216755,17z/data=!10m1!1e1!12b1?sou Map data ©2015 Google

FNK-5826 0068

## CORPORATIVO

Quiénes Somos (../../../../../quienes-somos/)

Mision / Vision (../../../../../mision-vision/)

Organización (../../../../../quienes-somos/organizacion/)

Intranet (../../../../../intranet/)

Unete a nuestro equipo (http://pedidos.grupowisa.com:7778/pls/apex/f?p=124:2)

## FUNDACIÓN LA RIVIERA

♥     (../../../../../fundacion-la-riviera/)



## NUESTRAS TIENDAS

FNK-5826 0069

Exhibit 58

# ACERCA DE LA RIVIERA

La Riviera se moderniza y adopta un nuevo concepto al abrir sus puertas en mercado local Panamá en 2005; como una de las exclusivas tiendas de glamour y vanguardia en el mundo de la belleza y la perfumería. Su nombre nace por La Riviera Francesa o más conocida como Costa Azul que representa y simboliza la experiencia de lujo, frescura y sublimidad que todos nuestros clientes experimentan al visitarnos.

Ofrecemos por primera vez en Panamá marcas exclusivas como: La Prairie, Mac, La Mer, Guerlain, Sisley entre otras; que con su prestigio, nos hacen ser reconocida como la tienda especializada en cosméticos, fragancias y tratamientos de belleza, con la mejor atención personalizada y ambiente acogedor para todos los que la visita.

Cada marca de belleza ha establecido un espacio con muebles personalizados, que trasmite sus valores y estilo de vida para brindar un ambiente especial. Donde recibirá asesoría personalizada por nuestros expertos que lo atenderán para descubrir todas las novedades y tendencias de última moda de belleza.

Contamos con más de 60 tiendas de La Riviera a nivel internacional en: México, Costa Rica, Nicaragua, El Salvador, Bolivia, Belice, Colombia, Guatemala, Honduras, Uruguay y en los Duty Free de los principales Aeropuertos de Centroamérica.

En Panamá tenemos actualmente 4 tiendas de La Riviera en diferentes centros comerciales como en: Multiplaza, Albrook, Metromall y la más reciente en Soho Mall con más de 300 marcas exclusivas para ofrecer a nuestra distinguida clientela. La amplitud, iluminación, modernismo y diseño de esta tienda, ofrece una invitación para reconocer cada espacio por su toque especial de elegancia. Fue diseñado pensando para que sea un lugar con ambiente agradable.

La Riviera, se distingue de otras tiendas por su belleza y perfumería de calidad. Nuestros productos, ambiente y trato especializado, son los elementos claves para que sea un sitio que complazca todas las necesidades del cuidado de la piel, el cabello, así como el realce de la belleza con lo último en cosméticos, tratamiento y fragancias.

# GALERÍA



(/assets/layout/gallery/La-Riviera-Aeropuerto.jpg)

LA RIVIERA - AEROPUERTO

FNK-5826 0071
2

La Riviera                                                      Page 3 of 8



(/assets/layout/gallery/La-Riviera-Andino.jpg)

LA RIVIERA - ANDINO



(/assets/layout/gallery/La-Riviera-Salitre-Plaza.jpg)

FNK-5826 0072
3

LA RIVIERA - SALITRE PLAZA



(/assets/layout/gallery/La-Riviera-Santa-Cruz2.jpg)

LA RIVIERA - SANTA CRUZ

La Riviera                                                                Page 5 of 8



(/assets/layout/gallery/La-Riviera-Albrook-Mall2.jpg)

LA RIVIERA ALBROOK MALL



(/assets/layout/gallery/La-Riviera-Multiplaza.jpg)

FNK-5826 0074

La Riviera

LA RIVIERA MULTIPLAZA

## CORPORATIVO

Quiénes Somos (../../../../../../quienes-somos/)

Mision / Vision (../../../../../../mision-vision/)

Organización (../../../../../../quienes-somos/organizacion/)

Intranet (../../../../../../intranet/)

Unete a nuestro equipo (http://pedidos.grupowisa.com:7778/pls/apex/f?p=124:2)

## FUNDACIÓN LA RIVIERA

❤ (../../../../../../fundacion-la-riviera/)

FNK-5826 0075

6

11/3/2015

6

La Riviera



## NUESTRAS TIENDAS

Bottega Veneta
(../../../../../../tiendas/bottega-veneta/)

Burberry (../../../../../../tiendas/burberry/)

Fendi (../../../../../../tiendas/fendi/)

Jimmy Choo (../../../../../../tiendas/jimmy-choo/)

La Hora (../../../../../../tiendas/la-hora/)

La Riviera (../../../../../../tiendas/la-riviera/)

Riviera Luggage
(../../../../../../tiendas/riviera-luggage/)

Longines (../../../../../../tiendas/longine/)

Mango (../../../../../../tiendas/mango/)

YSL (../../../../../../tiendas/ysl/)

## NEWSLETTER

Email

## DUTY FREE



Belice (/duty-free/belice/)



Colombia (/duty-free/colombia/)



Costa Rica (/duty-free/costa-rica/)



El Salvador (/duty-free/el-salvador/)



Guatemala (/duty-free/guatemala/)



México (/duty-free/mexico/)



Nicaragua (/duty-free/nicaragua/)



Panamá (/duty-free/duty-free-panama/)



San Andrés (/duty-free/san-andres/)

FNK-5826 0077
8
11/3/2015

8



Uruguay (/duty-free/uruguay/)

## CORPORATIVO

Quiénes Somos (../../../../../../quienes-somos/)

Misión / Visión (../../../../../../mision-vision/)

Organización (../../../../../../quienes-somos/organizacion/)

Intranet (../../../../../../intranet/)

Unete a nuestro equipo (http://pedidos.grupowisa.com:7778/pls/apex/f?p=124:2)

## FUNDACIÓN LA RIVIERA

♥      (../../../../../../fundacion-la-riviera/)

FNK-5826 0078
9

Duty Free



## NUESTRAS TIENDAS

Bottega Veneta (../../../../../tiendas/bottega-veneta/)

Burberry (../../../../../tiendas/burberry/)

Fendi (../../../../../tiendas/fendi/)

Jimmy Choo (../../../../../tiendas/jimmy-choo/)

La Hora (../../../../../tiendas/la-hora/)

La Riviera (../../../../../tiendas/la-riviera/)

Riviera Luggage (../../../../../tiendas/riviera-luggage/)

Longines (../../../../../tiendas/longine/)

Mango (../../../../../tiendas/mango/)

YSL (../../../../../tiendas/ysl/)

## NEWSLETTER

Email

Nombre

Apellido

Suscripción

FNK-5826 0079

# MERCADOS



(/mercados/bolivia/)

Bolivia (/mercados/bolivia/)



(https://www.lariviera.com.co/)

Colombía
(https://www.lariviera.com.co/)



(/mercados/costa-rica/)

Costa Rica (/mercados/costa-rica/)



(/mercados/el-salvador/)

El Salvador (/mercados/el-salvador/)



(/mercados/nicaragua/)

Nicaragua
(/mercados/nicaragua/)



(/mercados/panama/)

Panamá (/mercados/panama/

## CORPORATIVO

Quiénes Somos (../../../../../../quienes-somos/)

Mision / Vision (../../../../../../mision-vision/)

Organización (../../../../../../quienes-somos/organizacion/)

Intranet (../../../../../../intranet/)

Unete a nuestro equipo (http://pedidos.grupowisa.com:7778/pls/apex/f?p=124:2)

## FUNDACIÓN LA RIVIERA

♥ (../../../../../../fundacion-la-riviera/)

FNK-5826 0080

11

11

Mercados



## NUESTRAS TIENDAS

Bottega Veneta (../../../../../../tiendas/bottega-veneta/)

Burberry (../../../../../../tiendas/burberry/)

Fendi (../../../../../../tiendas/fendi/)

Jimmy Choo (../../../../../../tiendas/jimmy-choo/)

La Hora (../../../../../../tiendas/la-hora/)

La Riviera (../../../../../../tiendas/la-riviera/)

Riviera Luggage (../../../../../../tiendas/riviera-luggage/)

Longines (../../../../../../tiendas/longine/)

Mango (../../../../../../tiendas/mango/)

YSL (../../../../../../tiendas/ysl/)

## NEWSLETTER

Email

Nombre

Apellido

Suscripción

FNK-5826 0081

**Exhibit 58**

Spanish text:

Contamos con mas de 60 tiendas de La Riviera a nivel internacional en: Mexico, Costa Rica, Nicaragua, El Salvador, Bolivia, Belice, Colombia, Guatemala, Honduras, Uruguay y en los Duty Free de los principales Aeropuertos de Centroamerica.

Investigator translation:

We have more than 60 La Riviera stores in Mexico, Costa Rica, Nicaragua, El Salvador, Bolivia, Belize, Colombia, Guatemala, Honduras, Nicaragua, and in all of the Duty Free areas in the principal airports of Central America.

Redacted in Full Exhibits: 59-61
Non-Responsive Exhibit: 62

FNK-5826 0083

Treasury Sanctions the Waked Money Laundering Organization                                         Page 1 of 2

## U.S. DEPARTMENT OF THE TREASURY

## Press Center

**Treasury Sanctions the Waked Money Laundering Organization**

5/5/2016

*Action Exposes Extensive Drug Money Laundering Network Based in Panama*

WASHINGTON – Today, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated the Waked Money Laundering Organization (Waked MLO) and its leaders, Nidal Ahmed Waked Hatum (Waked Hatum) and Abdul Mohamed Waked Fares (Waked Fares), as Specially Designated Narcotics Traffickers pursuant to the Foreign Narcotics Kingpin Designation Act (Kingpin Act). OFAC also targeted six Waked MLO associates and 68 companies tied to the drug money laundering network, including Grupo Wisa, S.A., Vida Panama (Zona Libre) S.A., and Balboa Bank & Trust. Panamanian-Colombian-Spanish national Waked Hatum and Panamanian-Lebanese-Colombian national Waked Fares co-lead the Waked MLO, which uses trade-based money laundering schemes, such as false commercial invoicing; bulk cash smuggling; and other money laundering methods, to launder drug proceeds on behalf of multiple international drug traffickers and their organizations. As a result of today's action, all assets of these individuals and entities that are under the jurisdiction of the United States or in the control of U.S. persons are frozen, and U.S. persons are generally prohibited from engaging in transactions with them.

"This action exposes the Waked Money Laundering Organization and disrupts its ability to launder drug trafficking proceeds using trade-based methods, duty-free retail, real estate development, and financial services throughout the region," said John E. Smith, Acting OFAC Director. "We look forward to working jointly with the Panamanian authorities to protect the Panamanian and U.S. financial systems from abuse by narcotics traffickers and other illicit actors."

In addition to the Waked MLO and its two leaders, the OFAC action designated six Panama-based MLO associates for providing material support and/or acting on behalf of the MLO: Gazy Waked Hatum, Ali Waked Hatum, and Jalal Waked Hatum, brothers of Waked Hatum who manage Waked Hatum's import/export, retail, and real estate businesses; Mohamed Abdo Waked Darwich, Waked Fares' son, who manages Waked Fares' duty-free retail and real estate development operations; and two attorneys, Norman Douglas Castro Montoto and Lucia Touzard Romo, who provide a variety of services, including incorporating shell companies, to the Waked MLO and serve various roles in several Waked-related companies.

Today's designations also target the principal Panama-based companies used by the Waked MLO to launder drug and other illicit proceeds: Vida Panama (Zona Libre) S.A., an import/export company in Panama's Colon Free Trade Zone; Grupo Wisa S.A., a holding company for businesses involved in real estate, construction, retail, hospitality, and media, including the La Riviera chain of duty-free stores operating throughout Latin America; Soho Panama S.A. and related entities, including a luxury mall and real estate development in downtown Panama City; Balboa Bank & Trust, a Panamanian bank; and the Strategic Investors Group Inc., a holding company that owns and controls Balboa Bank & Trust as well as two other financial services companies. Balboa Bank & Trust was used to launder narcotics and other illicit proceeds for multiple international criminal organizations.

This action was conducted in coordination with the Drug Enforcement Administration, Customs and Border Protection, and the Miami Division of the Federal Bureau of Investigation. The Panamanian authorities have been informed of this designation and Panamanian and U.S. authorities will coordinate going forward.

Concurrent with this action, OFAC is issuing three general licenses that authorize certain transactions and activities for limited periods of time with five entities owned or controlled by the Waked network: Soho Panama, S.A. (a.k.a. Soho Mall Panama), a luxury mall in downtown Panama City; Plaza Milenio, S.A. (Millennium Plaza) and Administracion Millennium Plaza, S.A., related to a hotel complex in Colon, Panama; and two Panamanian newspapers, La Estrella and El Siglo, which are owned by Grupo Wisa, S.A. The first two general licenses aim to assist with winding down transactions for a limited period of time by authorizing specific activities that would otherwise be prohibited. The third general license is intended to allow both Panamanian newspapers to continue printing and operating by authorizing specific activities that would otherwise be prohibited.

Since June 2000, more than 1,900 individuals and entities have been named pursuant to the Kingpin Act for their role in international narcotics trafficking. Penalties for violations of the Kingpin Act range from civil penalties of up to $1.075 million per violation to more severe criminal penalties. Criminal penalties for corporate officers may include up to 30 years in prison and fines up to $5 million. Criminal fines for corporations may reach $10 million. Other individuals could face up to 10 years in prison and fines pursuant to Title 18 of the United States Code for criminal violations of the Kingpin Act.

To see a chart relating to today's action, click *here*

FNK-5826 0084

1

Treasury Sanctions the Waked Money Laundering Organization

To see the general licenses issued concurrent with today's action, click *here*    , *here*    , and *here*    . Frequently Asked Questions related to these general licenses are available *here*.

To see the identifying information relating to today's actions, click *here*.

For a complete listing of designations pursuant to the Kingpin Act, click *here*    .

###

May 2016

# WAKED MONEY LAUNDERING ORGANIZATION

U.S. Department of the Treasury
Office of Foreign Assets Control
Foreign Narcotics Kingpin
Designation Act







**Abdul Mohamed WAKED FARES**
DOB 19 Dec 1949
Alt. DOB 9 Dec 1949
POB Kamed El Louz, Lebanon
Citizen Panama, Colombia, Lebanon
Cedula No. N-19-804 (Panama)

Co-Leaders of WAKED MLO

**Nidal Ahmed WAKED HATUM**
DOB 26 Jul 1971
Alt. DOB 16 Jul 1971
Alt. DOB 02 Aug 1971
POB Barranquilla, Colombia
Citizen Panama, Colombia, Spain
Cedula No. N-19-680 (Panama)

## Panama-Based WAKED MLO Associates

     

**Mohamed Abdo WAKED DARWICH**
(a.k.a. Hamudi WAKED DARWICH)
DOB 30 Aug 1977, POB Colombia
Cedula No. N-19-828

**Norman Douglas CASTRO MONTOTO**
DOB 06 Jul 1962
Citizen Panama

**Lucia TOUZARD ROMO**
DOB 24 Jan 1971, POB Panama
Citizen Panama

**Jalal Ahmed WAKED HATUM**
DOB 18 Oct 1976, POB Colombia
Cedula No. 3-700-2344 (Panama)

**Ali WAKED HATUM**
DOB 28 Aug 1972
Cedula No. N-19-612 (Panama)

**Gary WAKED HATUM**
DOB 17 Sep 1973, POB Colombia
Cedula No. N-19624 (Panama)

## Principal Panama-Based WAKED MLO-related Entities



**VIDA PANAMA (ZONA LIBRE) S.A.**
Enrique A. Jimenez y Calle 16
Zona Libre de Colon
Colon, Panama
RUC # 2385900562210046



**GRUPO WISA S.A.**
(a.k.a. LA RIVIERA)
Calle 15 entre
Avenida Santa Isabel y Avenida Roosevelt
Zona Libre de Colon, Colon, Panama
RUC # 645451-1-458900



**STRATEGIC INVESTORS GROUP INC.**
(a.k.a. SI GROUP)
Edificio Balboa Bank & Trust
Calle 50 y Calle Beatriz Maria Cabal
Panama
RUC # 1649734-1-675348

**BALBOA BANK & TRUST, CORP.**
Edificio Balboa Bank & Trust
Calle 50 y Calle Beatriz Maria Cabal
Panama, Panama
RUC # 4199990-1-427208



**SOHO PANAMA, S.A.**
(a.k.a. SOHO MALL PANAMA)
Calle 50 (entre Calle 54 y 56)
Panama, Panama
RUC # 2422734-1-808115



**PERSHORE INVESTMENTS S.A.**
Edificio Balboa Bank & Trust
Calle 50 y Calle Beatriz Maria Cabal
Panama, Panama
RUC # 1420780-1-631797



**BALBOA SECURITIES, CORP.**
Edificio Balboa Bank & Trust
Calle 50 y Calle Beatriz Maria Cabal
Panama, Panama
RUC # 965431-1-528815



**STRATEGIC OIL CORP.**
Edificio Balboa Bank & Trust
Calle 50 y Calle Beatriz Maria Cabal
Panama, Panama
RUC # 2432399-1-809429



**GRUPO W S.A.**
(a.k.a. HOMETEK)
Pueblo Nuevo Calle 22,
Edificio La Galera Local 8
Panama, Panama
RUC # 4067941425327



**PLAZA MILENIO, S.A.**
(a.k.a. MILLENNIUM PLAZA, S.A.)
FNK-5824-0086
Panama
RUC # 15280-1-366202

May 2016

U.S. Department of the Treasury
Office of Foreign Assets Control

# WAKED MONEY LAUNDERING ORGANIZATION

Foreign Narcotics Kingpin
Designation Act





FNK-5826 0087