**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ABDUL MOHAMED WAKED FARES, *et al.*, *Plaintiffs*, v. JOHN E. SMITH, *et al.*, *Defendants*. | Civil Action No. 16-1730 (CKK) |

**MEMORANDUM OPINION**
(April 7, 2017)

Plaintiffs Abdul Mohamed Waked Fares, Mohamed Abdo Waked Darwich, Lucia Touzard Romo, and Groupo Wisa, S.A., have been designated as Specially Designated Narcotics Traffickers by Defendants pursuant to the Foreign Narcotics Kingpin Designation Act ("Kingpin Act"), 21 U.S.C. § 1901 *et seq*. In this action, they bring claims pursuant to the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA") for Defendants' alleged failure to provide them with sufficient post-designation notice regarding the bases for their designations. Presently before the Court are Plaintiffs' [3] Motion for Summary Judgment and Defendants' [14] Motion to Dismiss for Lack of Jurisdiction, or in the Alternative, for Summary Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes

---

[1] The Court's consideration has focused on the following documents:

- Final Mem. of P.&A. in Supp. of Pls.' Mot. for Summ. J., ECF No. 20 ("Pls.' Mem.");
- Defs.' Mem. of P.&A. in Supp. of their Mot. to Dismiss, or in the Alternative, for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J., ECF No. 14 ("Defs.' Mem.");
- Pls.' Combined Mem. of P.&A. in Reply to their Mot. for Summ. J. and in Opp'n to Defs.' Mot. to Dismiss, ECF No. 16 ("Pls.' Opp'n and Reply Mem.");
- Defs.' Reply Mem. in Support of their Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. 18 ("Defs.' Reply Mem.");
- Administrative Record, ECF No. 19 ("AR").

1

of the pending motions, the Court **DENIES** Plaintiffs' [3] Motion for Summary Judgment, **DENIES** Defendants' [14] Motion to Dismiss, and **GRANTS** Defendants' [14] Motion for Summary Judgment. For the reasons stated below, the Court concludes that Defendants have provided Plaintiffs with sufficient post-designation notice under both the Due Process Clause and the APA.

## I. BACKGROUND

A.  Statutory Background

The Kingpin Act authorizes the President to designate "foreign person[s] that play a significant role in international narcotics trafficking" as significant foreign narcotics traffickers ("SFNTs"). 21 U.S.C. §§ 1903(b), 1907(7). The Act also authorizes the Secretary of the Treasury, in consultation with other federal government agencies, to designate foreign persons "as materially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a[n] [SFNT]," *id.* § 1904(b)(2), "as owned, controlled, or directed by, or acting for or on behalf of, a[n] [SFNT]," *id.* § 1904(b)(3), or "as playing a significant role in international narcotics trafficking," *id.* § 1904(b)(4). The Secretary of the Treasury has delegated this authority to the Office of Foreign Assets Control ("OFAC"), an agency within the Department of the Treasury. Persons designated pursuant to such authority are referred to as "specially designated narcotics traffickers" ("SDNTs"). 31 C.F.R. §§ 598.803, 598.314. The consequences of an SDNT designation are dire, as the designation acts to block "all such property and interests in property within the United States, or within the possession or control of any United States person, which are owned or controlled by" the designated person.  21 U.S.C. § 1904(b).

Following designation, an SDNT may "seek administrative reconsideration of his, her or its designation . . . , or assert that the circumstances resulting in the designation no longer apply, and thus seek to have the designation rescinded . . . ." 31 C.F.R. § 501.807. Administrative reconsideration is handled by OFAC. *Id*. The SDNT may, in addition, seek a meeting with OFAC, although "such meetings are not required, and the office may, at its discretion, decline to conduct such meetings prior to completing a review pursuant to this section." *Id*. After OFAC "has conducted a review of the request for reconsideration, it [must] provide a written decision to the blocked person . . . ." *Id*.

B. Factual Background

OFAC designated Plaintiffs as SDNTs on May 5, 2016, along with non-parties Waked Money Laundering Organization ("Waked MLO") and Nidal Ahmed Waked Hatum. These designations were based on the government's determination that Plaintiffs play a significant role in international narcotics trafficking by facilitating money laundering on behalf of "multiple international drug traffickers and their organizations." AR 107. Following their designations, Plaintiffs filed a request for reconsideration with OFAC on May 24, 2016. In that request, Plaintiffs asked for access to the administrative record, expedited review of their request for reconsideration, and a meeting with OFAC. AR 3 Plaintiffs promised that the grounds for their request "w[ould] be provided in response to any OFAC questionnaires directed to the Petitioners, and w[ould] be supported by briefing and evidence volunteered by the Petitioners." *Id*.

OFAC denied Plaintiffs' request for reconsideration on June 8, 2016, noting that reconsideration was inappropriate because only 19 days had passed since the initial designation of Plaintiffs as SDNTs, and Plaintiffs had not provided any supporting evidence

in conjunction with their request. AR 16–17. Nonetheless, OFAC indicated that, should Plaintiffs' request for reconsideration "be further developed or clarified," they could submit another request for reconsideration at a later date. *Id*. OFAC also informed Plaintiffs that their request for the administrative record was being processed, but noted "that the review process can be lengthy and requires extensive interagency consultation in order to comply with U.S. government regulations regarding the protection of classified, privileged, and otherwise protected information." AR 18.

Plaintiffs received the redacted administrative record underlying their SDNT designations in two deliveries on July 5, 2016 and July 18, 2016. AR 22, 112. OFAC's letter accompanying the July 18, 2016 disclosure indicated that "should additional unclassified, non-privileged, or otherwise releasable information become available," it would be provided to Plaintiffs. AR 112. OFAC subsequently furnished additional information by means of two unredacted summaries of "otherwise privileged information," which were provided to Plaintiffs on August 26, 2016 ("August Summary") and October 28, 2016 ("October Summary"). AR 289, 292.

## II. LEGAL STANDARD

A.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Defendants move to dismiss this action as moot pursuant to Federal Rule of Civil Procedure 12(b)(1). To survive a motion to dismiss pursuant to Rule 12(b)(1), Plaintiffs bear the burden of establishing that the Court has subject-matter jurisdiction over their claims. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007); *Ctr. for Arms Control & Non-Proliferation v. Redd*, No. CIV.A. 05-682 (RMC), 2005 WL 3447891, at *3 (D.D.C. Dec. 15, 2005). The jurisdiction of federal courts is limited by Article III of the

Constitution to the adjudication of actual, ongoing cases or controversies; a limitation that "gives rise to the doctrines of standing and mootness." *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003); *Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C. Cir. 2011). Pursuant to the mootness doctrine, it "is not enough that the initial requirements of standing and ripeness have been satisfied; the suit must remain alive throughout the course of litigation, to the moment of final appellate disposition. If events outrun the controversy such that the court can grant no meaningful relief; the case must be dismissed as moot." *People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014) (internal quotation marks and citations omitted). "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted).

The Complaint seeks two forms of relief under the Due Process Clause and the APA stemming from Defendants' alleged failure to supply Plaintiffs with sufficient notice regarding the bases for their designations as SDNTs: (i) a declaration that "the administrative record provided by Defendants violates Plaintiffs' due process and statutory rights to adequate post-designation notice and a meaningful opportunity to administratively challenge their designations;" and (ii) an order requiring "Defendants to provide an unredacted copy of their administrative record, or any other solution chosen by the Court or agreed to by the parties which provides Plaintiffs with adequate post-designation notice." Compl. at 11. Although Defendants have provided additional disclosures to Plaintiffs following the initiation of this lawsuit, there is no question that Defendants have

yet to provide all of the relief sought in this action (*e.g.*, the complete unredacted administrative record upon which the SDNT designations were based). In other words, although the government contends that Plaintiffs have received all the disclosure that they are entitled to, Plaintiffs have not received all the relief that they have sought in their Complaint. Accordingly, this case is not moot.

That is not to say that Plaintiffs are entitled to such additional relief, but rather that this is a merits question that is not properly resolved on the basis of a Rule 12(b)(1) motion for lack of subject-matter jurisdiction. Accordingly, the Court resolves this matter on the basis of Plaintiffs' motion for summary judgment. Nonetheless, the Court observes that its resolution of whether Defendants have provided sufficient notice under the Due Process Clause and the APA would be identical were it instead to proceed on the basis of Defendant's motion to dismiss, as the record for purposes of that motion would be identical to the one considered for purposes of Plaintiff's motion for summary judgment. *See Lenox Hill Hosp. v. Shalala*, 131 F. Supp. 2d 136, 140 n.4 (D.D.C. 2000) (noting that a district court can consider the administrative record for purpose of a motion to dismiss pursuant to Rule 12(b)(1)).

B.  Cross-Motions for Summary Judgment

Plaintiffs have moved for summary judgment on their claims pursuant to the Due Process Clause and the APA, and Defendants have cross-moved for summary judgment in their favor. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.*

Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). Under the particular circumstances of this case, there is no factual dispute for the Court to resolve. Rather, the parties disagree only over the legal question of whether the disclosures by OFAC regarding Plaintiffs' SDNT designations satisfy due process and the APA. There is no dispute, for example, over the timing or content of OFAC's disclosures.

Furthermore, "when a party seeks review of agency action under the APA [before a district court], the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). Accordingly, "the standard set forth in Rule 56[] does not apply because of the limited role of a court in reviewing the administrative record . . . . Summary judgment is [] the mechanism for deciding whether as a matter of law the agency action is supported by the administrative record and is otherwise consistent with the APA standard of review." *Southeast Conference v. Vilsack*, 684 F. Supp. 2d 135, 142 (D.D.C. 2010). The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "This is a 'narrow' standard of review as courts defer to the agency's expertise." *Ctr. for Food Safety v. Salazar*, 898 F. Supp. 2d 130, 138 (D.D.C. 2012) (quoting

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

### III. DISCUSSION

The narrow question of law before the Court is whether the information provided to Plaintiffs regarding their designations by Defendants as SDNTs, coupled with the opportunity to present evidence to rebut those designations, comports with procedural due process and the APA. That question is further narrowed as Plaintiffs only contest the amount of post-deprivation notice they received, and not whether they were entitled to notice prior to their designations as SDNTs.[2] For the reasons stated below, the Court finds that Plaintiffs have been afforded sufficient procedural due process under the circumstances.

Defendants contend that, as foreign nationals, Plaintiffs lack "standing" to assert a claim under the Due Process Clause of the Fifth Amendment. Defs.' Mem. at 9. Nonetheless, the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has instructed that "[w]e need not decide whether or not [foreign plaintiffs] are entitled to constitutional protections [in circumstances where,] even assuming that they are, they have received all the process that they are due under our precedent." *Jifry v. F.A.A.*, 370 F.3d 1174, 1183 (D.C. Cir. 2004). Here, the Court determines that Plaintiffs have received notice and an opportunity to be heard in a manner that comports with due process, and therefore does not reach the antecedent question of whether Plaintiffs are entitled to

---

[2] In any event, the D.C. Circuit has held that pre-designation notice is not required under the Kingpin Act as "providing notice before blocking the assets of international narcotics traffickers would create a substantial risk of asset flight." *Zevallos v. Obama*, 793 F.3d 106, 116 (D.C. Cir. 2015).

the protections of the Due Process Clause.

Finally, contrary to Plaintiffs' contentions, the Court finds no indication in the present record that OFAC has failed to "follow its own regulations and procedures." Pls.' Mem. at 14. Consequently, as OFAC has furnished Plaintiffs with all of the materials that was required by the Due Process Clause and the APA, Defendants are entitled to summary judgment as a matter of law.

A. Due Process

The Court first surveys the limited case law that addresses the amount of disclosure required of OFAC following an SDNT designation, and then analyzes whether OFAC's disclosures in this matter, in light of the applicable case law, satisfy due process.

*1. Relevant Case Law*

"[T]he fundamental norm of due process clause jurisprudence requires that before the government can constitutionally deprive a person of the protected liberty or property interest, it must afford him notice and hearing." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 205 (D.C. Cir. 2001) ("*NCOR*") (citing *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)). Nonetheless, "unlike some legal rules, [due process] is not a technical conception with a fixed content unrelated to time, place and circumstance[; . . .] due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. (internal quotation marks and citations omitted). The D.C. Circuit recently addressed what post-deprivation process is required of OFAC following an SDNT designation. In *Zevallos v. Obama*, the D.C. Circuit found that plaintiff was afforded sufficient post-designation process because OFAC provided plaintiff "several times with the unclassified evidence on which it relied to designate him," and plaintiff "not only had

the chance to contest the propriety and adequacy of that evidence but did so on more than one occasion." 793 F.3d 106, 117 (D.C. Cir. 2015). The D.C. Circuit further noted that, under the Kingpin Act and associated regulations, plaintiff "remains free now to continue contesting his designation by filing new delisting requests, meaning that he can make any new arguments that occur to him and reiterate and expand any arguments he felt received short shrift on Treasury's last review." *Id.* Consequently, the D.C. Circuit found that plaintiff was "given notice and a meaningful opportunity to be heard, which is what the Due Process Clause requires." *Id.* at 116.

The D.C. Circuit, in reaching this conclusion, relied on its prior holdings in the context of a number of other "closely analogous statutes" that permit the executive branch to block the U.S.-based assets of certain foreign-based or affiliated organizations and individuals. *Id.* at 113. In *Holy Land*, the D.C. Circuit addressed the designation of the Holy Land Foundation as a "'Specially Designated Global Terrorist' ('SDGT') pursuant to an Executive Order issued under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.* ('IEEPA')." *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 159 (D.C. Cir. 2003). The processes for challenging SDNT designations under the Kingpin Act are identical to those for challenging SDGT designations under IEEPA, as in both cases, the affected party is added to a list of "Specially Designated Nationals." *Zevallos v. Obama*, 10 F. Supp. 3d 111, 126 (D.D.C. 2014) ("The legal consequence of this list is that OFAC's designation-challenging procedures for such persons designated, under both the IEEPA and the Kingpin Act, are identical."), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015). The Holy Land Foundation challenged its designation as an SDGT on due process grounds. In denying that challenge, the D.C. Circuit held that, in the context of SDGT designations,

"due process require[s] the disclosure of *only* the unclassified portions of the administrative record[,]" and consequently, that plaintiff's contention "that due process prevents its designation based upon classified information to which it has not had access is of no avail." *Holy Land*, 333 F.3d at 164.

The decision in *Holy Land* was in turn based on a line of cases interpreting another "closely analogous statute," the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), pursuant to which the Secretary of State is "empowered to designate an entity as a 'foreign terrorist organization' ['FTO']." *NCOR*, 251 F.3d at 196. Like SDNT and SDGT designations, the "consequences of [an FTO] designation are dire[,]" including blocking of U.S.-based funds and resources, and denial of entry into the United States for associated individuals. *Id*. AEDPA, like the Kingpin Act, permits the government to submit classified portions of the administrative record to the reviewing court *in camera* and *ex parte*. *See* 21 U.S.C. § 1903(i) (with respect to the Kingpin Act, providing that classified information "may be submitted to the reviewing court *ex parte* and *in camera*"). In *NCOR*, as in *Holy Land,* the D.C. Circuit concluded that the government's notice "need not disclose the classified information to be presented *in camera* and *ex parte* to the court under the statute." *Id*. at 208. Consequently, as in *Holy Land*, the D.C. Circuit only required disclosure of the redacted, unclassified administrative record. *Id*. at 209. In a subsequent decision, however, the D.C. Circuit suggested a limit to the ability of the government to rely on undisclosed, classified information in the AEDPA context, noting that "none of the AEDPA cases decides whether an administrative decision relying critically on undisclosed classified material would comport with due process because in none was the classified record essential to uphold an FTO designation." *People's Mojahedin Org. of Iran v. U.S.*

*Dep't of State*, 613 F.3d 220, 231 (D.C. Cir. 2010).

In addition, the parties rely extensively on two out-of-circuit decisions under IEPPA. Although these decisions are not binding, the Court finds them instructive. First, in *Al Haramain*, the United States Court of Appeals for the Ninth Circuit ("Ninth Circuit") reviewed OFAC's blocking and subsequent SDGT designation of an organization known as "AHIF-Oregon." *Al Haramain Islamic Found., Inc. v. U.S. Dep't of Treasury*, 686 F.3d 965, 973 (9th Cir. 2012). In addressing AHIF-Oregon's due process challenge, the Ninth Circuit first held that, "we join all other courts to have addressed the issue in holding that, subject to the limitations discussed below, the government may use classified information, without disclosure, when making designation determinations." *Id*. at 982. Nonetheless, the Ninth Circuit observed that "there may be means of providing information to the potential designee that do not implicate national security. For example, an unclassified summary [of the classified portions of the administrative record], by definition, does not implicate national security because it is unclassified." *Id*. at 983. The court also recognized, however, that "disclosure may not always be possible. For example, an unclassified summary may not be possible because, in some cases, the subject matter itself may be classified and cannot be revealed without implicating national security." *Id*. Ultimately, the Ninth Circuit concluded that OFAC's notice to AHIF-Oregon failed to satisfy due process because "OFAC provided notice concerning only one of three reasons for its investigation and designation and that notice occurred seven months after it froze AHIF–Oregon's assets." *Id*. at 986. In the opinion of the Ninth Circuit, "[s]uch a significantly untimely and incomplete notice [did] not meet the requirements of due process." *Id*.

Second, in *KindHearts*, Chief Judge James G. Carr, of the United States District

Court for the Northern District of Ohio, likewise addressed whether OFAC had comported with due process following its designation of an entity as an SDGT. *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857, 864 (N.D. Ohio 2009). The essence of the charge against KindHearts, an Ohio-based charitable organization, was that it had coordinated with and made contributions to Hamas. *Id*. at 867. OFAC blocked KindHearts' assets in February 2006, pending further investigation, and officially designated KindHearts as an SDGT in May 2007. *Id*. at 899. In conjunction with that designation, and more than 15 months after the initial block, OFAC provided KindHearts with the unclassified administrative record, which was composed of 35 unclassified, non-privileged exhibits, many of which did not mention KindHearts. *Id* at 902–03. Accompanying the redacted administrative record was "an unclassified three-page summary of the classified evidence." *Id* at 868. According to the *KindHearts* court, the summary "provided no explanation of the specific charges [OFAC] was considering against KindHearts or why it thought the evidence supported a potential designation." *Id*. Ultimately, Chief Judge Carr held that KindHearts was not provided sufficient notice following the blocking of its assets by OFAC, as KindHearts "remain[ed] largely uninformed about the basis for the government's actions." *Id*. at 904. In particular, Chief Judge Carr found that the government had failed to state "which recipients, to the extent that it knows of specific recipients, were Hamas fronts or Hamas affiliated." And noted that "[w]ithout this sort of information, KindHearts cannot meaningfully challenge the government's actions." *Id*. The court also faulted the government for failing to *timely* provide the unredacted administrative record following the blocking action. *Id*. at 905 ("To comply with due process requirements, OFAC should, at the very least, have promptly

given KindHearts the unclassified administrative record on which it relied in taking its blocking action."). In other words, the due process deficiency in *KindHearts* resulted not just from the lack of pertinent information regarding the government's charges against KindHearts, but also from the delay in providing information.

With these authorities in mind, the Court turns to address the particular issues presented in this matter.

### 2. OFAC's Post-Designation Disclosures Satisfy Due Process

The Court begins again by noting what is *not* at issue in this case. Although due process requires a sufficient notice and hearing under the circumstances, Plaintiffs here only contest the sufficiency of the notice they received from OFAC, and not their opportunity to be heard. As discussed previously, Plaintiffs requested an opportunity to present rebuttal evidence to OFAC shortly after they were designated as SDNTs. OFAC declined that request, noting that less than three weeks had passed since the initial designation, and that Plaintiffs had not furnished any evidence to rebut their designations. *Supra* at 3. Nonetheless, as provided for by applicable regulations, OFAC indicated that Plaintiffs could submit rebuttal evidence at a later time, and they in fact may do so as many times as they please. Consequently, and as recognized by the D.C. Circuit in *Zevallos*, OFAC has provided ample opportunity for SDNT-designees such as Plaintiffs to present rebuttal evidence and to thereby supplement the administrative record. 793 F.3d at 115 ("Treasury's procedure governing requests for reconsideration of designation decisions imposes no limit on the number of times a designated person can request delisting." (citing 31 C.F.R. § 501.807)). Although Plaintiffs criticize OFAC's response to their initial request for reconsideration in their briefing, *see* Pls.' Opp'n and Reply Mem. at 11, the Complaint

includes no claim regarding OFAC's hearing procedures or implementation of those procedures in this case. In fact, the relief requested in this matter only pertains to the sufficiency of notice, *see* Compl. at 11, and it is axiomatic that Plaintiffs cannot amend their Complaint via their briefs, *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Service*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003).

Accordingly, the Court turns to address the narrow question at issue in this matter: the sufficiency of the notice OFAC provided Plaintiffs following their designation as SDNTs. Collectively, that notice included a redacted administrative record and two unredacted summaries of privileged information (*i.e.*, the August and October Summaries). Defendants represent that the redactions result either from information being "law enforcement sensitive," or because the redacted information does "not pertain to Plaintiffs' designations." Defs.' Mem. at 4. Plaintiffs also received a copy of the publicly filed press release announcing their designation as SDNTs. *See supra* at 3–4.

A substantial portion of the administrative record is redacted, and Plaintiffs contend that the unredacted portions do not provide meaningful information regarding the basis for their designation as SDNTs. Pls.' Mem. at 8 –14; *see generally* AR at 22–287. The Court agrees with this assessment. Apart from conclusory statements indicating that Plaintiffs are engaged in money laundering activities, there is scant information in the redacted administrative record regarding Plaintiffs' alleged money laundering activities. Rather, the unredacted portions of the administrative record consist chiefly of publicly available information regarding Plaintiffs' personal and business relationships and activities unrelated to money laundering. The government does not seem to contest this point. *See* Defs.' Reply at 6 ("Here, by contrast, much of the evidence is privileged, which made

OFAC's summaries appropriate.").

More substantial information is provided in the public press release and the August Summary of redacted information. In particular, these documents indicate that Plaintiff Waked Fares co-leads the Waked MLO, "which uses trade-based money laundering schemes, such as false commercial invoicing; bulk cash smuggling; and other money laundering methods, to launder drug proceeds on behalf of multiple international drug traffickers and their organizations." AR 107; *see also* AR 290. The press release adds that Plaintiff Lucia Touzard Romo was one of two attorneys who provided services to the Waked MLO, including by incorporating shell companies, and that Plaintiff Waked Darwich, Waked Fares' son, manages duty-free retail and real estate development operations, which the press release indicates are allegedly used to launder drug proceeds on behalf of the Waked MLO. AR 107. The August Summary, in turn, emphasizes the government's view that La Riveria Duty Free stores and Plaintiff Groupo Wisa, S.A., "have been used to launder drug proceeds via bulk cash smuggling and false commercial invoicing." AR 290. In particular, the government states that "[c]ouriers for various international drug trafficking organizations transport bulk cash to and through La Rivera Duty Free stores, and the drug proceeds are subsequently laundered via the stores using false invoices, in order to legitimize the illicit funds." *Id*.

Unquestionably, however, the most substantive notice provided by OFAC to Plaintiffs regarding the basis for their SDNT designations is the three-page October Summary. *See* AR 294–96. In sum and substance, the summary informs Plaintiffs that the government views them as principal members of the largest known money laundering organization in Panama. AR 294. The summary notes that Plaintiff Waked Fares has been

identified as a Consolidated Priority Organization Target due to his status as co-head of the Waked MLO. *Id*. This designation means that he is viewed as a command and control element of one of the most prolific international drug trafficking and money laundering organizations. AR 294 n.2.

The summary details the history of Plaintiff's alleged involvement in money laundering for international drug cartels, beginning with work for the Medellin Cartel in the early-to-mid 1980s, and lists several such organizations and the time-periods during which Plaintiff Waked Fares allegedly provided those organizations with money laundering services. AR 294–95. Furthermore, the summary explains the manner in which the Waked MLO allegedly engages in money laundering, indicating that the scheme "involves sending millions of U.S. dollars in drug proceeds to Colombia and Panama, primarily by smuggling bulk cash on commercial aircraft." AR 295. An example is provided of one of the specific ways in which the Waked MLO allegedly structures and obscures money laundering transactions. *Id*.

The October Summary also details the business entities that are allegedly used to facilitate money laundering, and how those entities are used. For example, the summary indicates that "[Plaintiff] GRUPO WISA and VIDA PANAMA received bulk drug proceeds from drug traffickers, including the SINALOA CARTEL, as part of the drug money laundering scheme. GRUPO WISA and VIDA PANAMA would deposit the drug proceeds into banks in Panama, sell products to businesses in Colombia, and then use false invoices to deposit cash as payment for merchandise in banks in Panama." AR 296. Similarly, the summary indicates that "[Plaintiff] WAKED FARES owns LA RIVIERA duty free stores in the Tocumen Airport in Panama City, Panama that are being used to

launder millions of dollars in drug proceeds. Drug trafficking organizations are transporting bulk cash in suitcases aboard commercial airlines into Tocumen Airport, delivering the bulk cash to LA RIVIERA duty free stores and bribing airport officials." *Id.*

The summary adds that the Waked MLO also launders money through real estate investments; and that Plaintiff Waked Fares exercises control over Balboa Bank and Trust, in which he deposits "bulk cash proceeds moved to Panama," and through which he controls "bank accounts for hundreds of companies, real and fictitious, and launder[s] large sums of drug trafficking proceeds on behalf of [his] clients." *Id.* Plaintiff Waked Fares also is alleged to "use shell companies and property holdings as collateral in exchange for loans," and the summary details the manner in which such loans are used to further money laundering operations. *Id.* Finally, the summary explains the relationship between Plaintiffs Waked Darwich and Romo, and the Waked MLO and Plaintiff Waked Fares. In particular, the summary indicates that "Lucia TOUZARD ROMO (TOUZARD ROMO) provides a variety of services, including shell and other company incorporation, corporate development, and customs facilitation, to WAKED FARES, Mohamed Abdo WAKED DARWICH (WAKED DARWICH), and GRUPO WISA, as well as the WAKED MLO." AR 294. Plaintiff Waked Darwich, in turn, is described as "controlled or directed by, and/or acts for or on behalf of, WAKED FARES as shown by his position as a deputy to WAKED FARES in WAKED FARES-owned or -controlled companies." *Id.*

Consequently, the October Summary informs Plaintiffs of the illicit activities in which OFAC believes they are engaged; how and where they purportedly engaged in those activities; during which time periods; for which entities they allegedly performed money laundering services; and the relationship between Plaintiffs and others implicated in the

purportedly illicit activities. As noted above, the D.C. Circuit has held that in the context of SDNT and similar-type designations by OFAC, the notice component of due process is satisfied by disclosure of the *redacted* administrative record, and the hearing component is satisfied by the opportunity to present OFAC with rebuttal evidence, which is provided for by applicable regulations. Plaintiffs, not without reason, contend that in this matter, the redacted administrative record does not provide them with adequate notice. The Court, as did the D.C Circuit in *Mojahedin*, recognizes that taken to its logical extreme, the notion that a *redacted* record will always suffice to provide sufficient notice is clearly wrong; a completely redacted record provides no notice whatsoever. But that is not the situation here, and in this Court's view, the total body of information provided by OFAC to Plaintiffs satisfies due process as it provides sufficient notice for Plaintiffs "to effectively be heard" via the post-designation hearing processes administered by OFAC. *NCOR*, 251 F.3d at 208. In particular, unlike the plaintiffs in *Al Haramain* and *KindHearts*, who were left in the dark as to the reasons for their designations, Plaintiffs here have been apprised, primarily via the October Summary, of the government's view regarding the basis for their designations, and as such, can meaningfully "proffer rebuttal evidence and arguments to OFAC to contest [their] designation[s]." *Zevallos*, 10 F. Supp. 3d at 131.

Plaintiffs challenge this point on several grounds. First, they contend that without more specific information regarding the transactions that OFAC believes were used to facilitate money laundering, Plaintiffs cannot meaningfully rebut the evidence underlying their designations as SDNTs. In particular, Plaintiffs fault the October Summary for failing to contain any "particularized, verifiable allegation that any Plaintiff knew about or engaged in sanctionable conduct." Pls.' Opp'n and Reply Mem. at 14. According to

Plaintiffs, in order to comport with due process, OFAC was required to provide notice that contained statements of the form:

> According to Confidential Informant [Redacted], who had credible first-hand knowledge of the information provided as a result of [X position or role], on [X date] Abdul Waked did [X sanctionable conduct] at [X duty free store] in [X country].

*Id.* at 12. The Court disagrees. First, Plaintiffs cite to no authority supporting their supposition that this degree of disclosure is required under the circumstances of this case. To the contrary, the authorities recounted by the Court above expressly permit the government to rely on classified information, to provide only a *redacted* administrative record, and to supply privileged information in summary form. Furthermore, as a practical matter, the Court disagrees that such detailed information is required for Plaintiffs to effectively rebut their designations as SDNTs. The government's accusations against Plaintiffs are audacious; Plaintiffs are said to be directly involved in the management of Panama's largest money laundering organization. That organization is further alleged to have ties with some of the world's largest and most heinous narcotics trafficking organizations. And business entities controlled by Plaintiffs are alleged to routinely engage in overt acts of money laundering on behalf of such narcotics traffickers. If Plaintiffs decide to rebut these allegations, they could, for instance, provide OFAC with an independent auditor's review of the activities and transactions undertaken by the business entities under their control. In short, given the nature of the allegations against them, Plaintiffs are not, in the Court's view, for want of opportunities to present evidence to rebut those allegations. Moreover, although Plaintiffs posit that allegations of the form they request "would not reveal any law enforcement sensitive information," *id.*, the Court is not convinced; the level of detail sought by Plaintiffs may very well suffice for the identification of confidential

information and identities, or otherwise jeopardize ongoing investigations. Plaintiffs also fault the October Summary for using the "conditional [and] passive tense," and thereby relaying "*hypothetical* scenarios," because of its use of the word "would." *Id*. 12–13. The Court disagrees with this contention as well. The October Summary uses the word "would" not to describe hypothetical scenarios, but rather to describe methods that were *repeatedly* used by Plaintiffs to effect money laundering transactions. *See, e.g.*, AR 296 ("GRUPO WISA and VIDA PANAMA would deposit the drug proceeds into banks in Panama").

In addition, Plaintiffs point out that the administrative record upheld in *Zevallos* was far more detailed than the administrative record in this case. Pls.' Opp'n and Reply Mem. at 9–11. The Court does not dispute this observation, but agrees with the government's view of the matter. Defs.' Reply Mem. at 6. In *Zevallos* the government was able to furnish a substantially unredacted record. Here, for reasons of law enforcement sensitivity, the administrative record has been largely redacted. Consequently, in order to apprise Plaintiffs of the basis for their designations, the government has provided them with unredacted summaries of privileged information. In other words, given the different circumstances of the two cases, the form of notice in this matter is different from the one in *Zevallos*, but ultimately sufficient, for the reasons stated above. The Court is also sensitive to the government's need in this case to redact sensitive law enforcement information, including information regarding the particular law enforcement sources from which the privileged material was derived, and information that may jeopardize ongoing investigations.[3] Moreover, unlike the deficient summary of privileged information at issue

---

[3] Plaintiffs also suggest that Defendants were required to produce a privilege log in conjunction with the redacted administrative record, but cite no authority for this proposition. Pls.' Opp'n and Reply Mem. at 16. The case Plaintiffs do cite, *Tuite v. Henry*,

in *KindHearts*, which "provided no explanation of the specific charges [OFAC] was considering against KindHearts or why it thought the evidence supported a potential designation," the October Summary details the bases for Plaintiffs' designations; and Plaintiffs, unlike KindHearts, have not contended that they were deprived of due process due to a *delay* in receiving adequate notice. *See supra* at 12–13. Furthermore, the Court reiterates that the adequacy of notice in this matter is coupled with the opportunity for Plaintiffs to meaningfully challenge their designations before OFAC through subsequent requests for reconsideration of their designations as SDNTs. Accordingly, the Court concludes that Plaintiffs have been afforded post-designation process in a manner that comports with the Due Process Clause of the Fifth Amendment.

## B. APA Requirements

Plaintiffs also claim that OFAC acted arbitrarily and capriciously under the APA by failing to "follow its own regulations and procedures." Pls.' Mem. at 14 (citing *Nat'l Envtl. Dev. Assoc.'s Clean Air Project v. E.P.A.*, 752 F.3d 999, 1009 (D.C. Cir. 2014) ("Although it is within the power of an agency to amend or repeal its own regulations, an agency is not free to ignore or violate its regulations while they remain in effect." (internal quotation marks and alterations omitted)). In particular, Plaintiffs claim that "[f]or the same reasons

---

98 F.3d 1411 (D.C. Cir. 1996), involved a claim of law enforcement privilege in response to a subpoena issued by private litigants in a civil suit, and not the provision of an administrative record following agency action. *See also FBME Bank Ltd. v. Lew*, 209 F. Supp. 3d 299 (D.D.C. 2016) ("[I]t is far from the norm to require agencies to produce privilege logs when they exclude material from an administrative record. In fact, the general rule is that when documents are not part of the administrative record—having been omitted on privilege grounds—an agency that withholds these privileged documents is not required to produce a privilege log to describe the documents that have been withheld." (internal quotation marks omitted)).

that OFAC's provision of an almost-entirely redacted and uninformative administrative record violates Plaintiffs' due process rights, it also violates the APA's statutory mandate that OFAC strictly comply with its own procedural regulations and that it act constitutionally." *Id*. Plaintiffs seemingly contend that the APA requires the same degree of post-designation process as the Due Process Clause. *See* Pls.' Opp'n and Reply Mem. at 4 (relying on Defendants' purported concession "that the post-designation notice requirements of the APA are coextensive with those of the Fifth Amendment"). The Court, however, has concluded that OFAC comported with due process in its provision of post-designation notice to Plaintiffs, and moreover, Plaintiffs have not pointed to any regulation that required OFAC to provide more notice than what has already been provided in this matter. For the reasons stated above, the Court also disagrees with Plaintiffs' contention that the notice in this case is inadequate for Plaintiffs to seek administrative reconsideration. Pls.' Mem. at 14. Accordingly, the Court concludes that the provision of notice in this matter was not violative of the APA.

## IV. CONCLUSION

The Court has concluded that Plaintiffs' claims pursuant to the Due Process Clause and the APA fail as a matter of law. As such, summary judgment must be entered in favor of Defendants. Consequently, for the foregoing reasons, the Court **DENIES** Plaintiffs' [3] Motion for Summary Judgment, **DENIES** Defendants' [14] Motion to Dismiss, and **GRANTS** Defendants' [14] Motion for Summary Judgment.

An appropriate Order accompanies this Memorandum Opinion.

Dated: April 7, 2017

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge